CORBIN ALEXANDER, Respondent, v. JOHN J. HELBER, Appellant.

1. *Municipal Corporation—Taxes.*—Where the collector of taxes of a town was authorized to collect the tax assessed by a civil suit, he could not enforce the payment of the tax, by a levy upon the property, before judgment obtained.

2. *Trespass—Damages.*—Where the collector of taxes, levied upon property without authority of law, and the owner became the purchaser, in assessing the damages, the amount of the tax should be deducted.

3. *Trespass—Damages.*—Where an officer is guilty of a trespass in levying upon and selling property illegally, if the owner bid in such property at such sale, the measure of damages will be the price bid at the sale.

*Appeal from St. François Circuit Court.*  ·

On the 28th October, 1859, the plaintiff commenced suit against the defendant in the Circuit Court of St. François county. In his petition, he alleges that the defendant on or about the 15th day of May, 1859, assuming to have and exercise a certain office under the name and style of marshal of the town of Farmington, in said county, State of Missouri, and ex-officio collector of taxes in said town, did unlawfully seize, take and detain a negro boy by the name of Nelson, belonging to the plaintiff; and afterwards, on the 22d day of June, A. D. 1859, unlawfully proceeded to sell, and did sell said boy, with all plaintiff's right, title and interest; that such sale was against his express prohibition, and that by such unlawful seizure and selling of said slave plaintiff suffered damage in the sum of twelve hundred dollars, for which he asks judgment.

The defendant answered, setting up as his defence to plaintiff's cause of action, that, at the times of levy and sale of said slave, he was in fact marshal and ex-officio collector of the taxes due the corporation of the town of Farmington, duly commissioned and qualified as such; that said town of Farmington was duly incorporated under the laws of the State, under the name and style of the inhabitants of the town of Farmington. That there was on the tax list for the years 1858 and 1859, the sum of $16.68 due and owing by the said plaintiff to said corporation; that said lists were placed in his hands for collection; that he demanded of plaintiff payment of said taxes on the 14th April, 1859; that plaintiff refused to pay the same, and that he afterwards on the 15th day of May, A. D. 1859, by authority of and in pursuance of the ordinances of said corporation, did levy on and seize the boy mentioned, for the purpose of coercing the payment of said taxes; that the sale was made by authority of and in pursuance to said ordinances; that the slave sold for his value, and out of the proceeds of sale defendant deducted the taxes aforesaid, to wit, $16.68, and applied the

same to the payment of the taxes due and owing by plaintiff to said corporation, and returned the remainder to the plaintiff. Defendant denies that the plaintiff was or is injured by any unlawful act of the defendant, but that if any damage was in fact done to the plaintiff, it was the result of his own improper conduct in and about the matter. Defendant avers that plaintiff had the slave bid in with his own money, and had him then in his own possession as his own property.

The plaintiff filed a motion to strike out the defendant's answer for the following reasons: 1. It presents no facts which make a legal defence. 2. The answer claims that the defendant was marshal and ex-officio collector of the town of Farmington, but that the statute in relation to towns does not make a marshal, collector; nor authorize the same person to exercise the same offices. 3. The answer shows a selling of the slave as directed by the ordinances of the corporation, but fails to show a compliance with the provisions of the statutes in such cases. 4. The answer shows no judgment in favor of the corporation against the plaintiff as required by statute. 5. The answer is argumentative.

The motion of the plaintiff was sustained, the answer stricken out, and the defendant excepted.

The defendant on leave of the court filed an amended answer, denying that he unlawfully seized and sold the slave mentioned; denying that the plaintiff was damaged by the seizure and sale of the slave; averring that he was marshal and ex-officio collector of said corporation, and denying that the plaintiff ought to recover any sum whatever as damages for the alleged seizure and sale of said slave.

At the May term of said court, 1864, the cause came on to be tried, a jury selected, and the plaintiff in order to sustain his cause gave in substance the following evidence: That the defendant sold the boy in question at public sale, at the courthouse door in St. François county, State of Missouri, four or five years ago; that plaintiff was present at the sale and forbade the sale; he told the by-standers to be-

ware, they would get no title; that the whole thing was illegal; that at the time of the sale the boy was worth from $800 to $1,000. That about 15th June, A. D. 1859, Wm. Hunt in company with Achilles Smith came to the treasurer's office of St. François county, presented some county warrants drawn in favor of Achilles Smith, and drew $585 and left it with the treasurer till called for, and on the day of the sale of the slave, and immediately after the sale, he came and drew the money. Defendant on the cross-examination of plaintiff's witnesses, proved that the effect of forbidding the sale of property at a public sale, was to cause it to sell for less than its actual value, and that after the sale the slave returned to the possession of the plaintiff, and remained with him till the bringing of this suit, and until he ran off in 1862; that he never was in possession of William Hunt, or any other person than the plaintiff.

The defendant then proved that the slave sold for $600; that after deducting the taxes due from plaintiff to the corporation, and some small amount for costs, the remainder was returned to the plaintiff, which he accepted and receipted for; that at the sale the bidders were deterred from bidding by the threats of the plaintiff, that the purchaser would get no title, and that he would sue the purchaser, &c. The defendant then proved that the town of Farmington was duly incorporated under the statutes by the county court of St. François county; that he was on the 15th day of May, 1859, and on the 22d day of June, A. D. 1859, duly qualified and commissioned as marshal of the town of Farmington; that by the ordinances he, as marshal and ex-officio collector, was authorized to levy upon and sell personal property of any one residing in the corporation who might refuse to pay the corporation taxes; that the tax list was duly made out and placed in his hands previous to his making demand of the plaintiff for the taxes, and previous to the seizure of plaintiff's property as above stated. That the taxes due by the plaintiff to the corporation for the years 1858 and 1859, amounted to $16.68; that the property

levied upon was surrendered by plaintiff of his own choice when called on by the collector for property ; that a delivery bond was taken after the levy, and plaintiff retained possession of the slave ; that the sale took place in all respects as provided for and required by the ordinances of the corporation ; that the ordinances were duly adopted by the board of trustees of the corporation.

*J. G. Beal*, for appellant.

The court below committed error in striking out the answer of the defendant, and herein the appellant maintains the following propositions :

I. The corporation of the town of Farmington had power to " pass by-laws and ordinances, to levy and collect taxes." ( 2 R. C. 1525, § 7.) The power to " levy and collect, necessarily implies the power to provide the mode and manner of collecting." Whenever a power is granted, all necessary means to carry the power into force are implied. (1 Kent's Comm. 464 ; 2 Hilton's N. S., C. P., 203.)

II. The provision in Sec. 14, act entitled Towns, that the town collector may bring suit for the taxes due from any one refusing to pay, is suggestive of a remedy and cumulative, and not imperative. By the same section, power is given to sell the real estate of non-residents, whose taxes are not paid, by the ordinances of the corporation, without suit and judgment first obtained. It would, then, be inconsistent to hold that the corporation could not exercise the less important power of selling personal property by provisions of ordinance. The construction of this section by the respondent is not only inconsistent but exceedingly inconvenient. (Sedg. Constr. of Stat., 238.)

III. The words " may" or " shall" are only imperative when the public or individuals are interested in the act being done, and have a claim *de jure* that the power be exercised. (5 Johns. Ch. 101 ; 5 How. 188 ; 6 id. 223 ; 10 id. 238.) Plaintiff had no right to require suit to be brought ; the ordinances provided for, and a court of appeals was actually held

in all respects as in cases of State and county taxes. (Sedg. Constr. of Stat., 438 *et seq.*; id. 238.)

IV. The answer alleges that the slave was bid off for the plaintiff, and paid for with his own money. This was a good defence as to all things except nominal damages, and it should not have been stricken out. (9 Wend. 36 ; 16 Wend. 609 ; 3 Dana, 491.)

V. The answer alleges that if the plaintiff was damaged, it was by his own improper and imprudent interference at the sale, and should not recover damages occasioned by himself. This constitutes a defence to the plaintiff's action. (2 Greenl. Ev. § 266; 8 Am. Jurist 288–313; 2 Greenl. Ev., §§ 268, 272.) A party is entitled to no more damages than the facts and circumstances show him entitled to.

VI. Application of the proceeds of the sale of the slave to the payment of the taxes due and owing by plaintiff to the corporation, and a return of the balance to the plaintiff, was a good defence as mitigation of damages. (2 Greenl. Ev., § 276 ; 14 Pick. 356, 361; 9 Pick. 551; 6 Mass. 20 ; 5 Mass. 104 ; 3 Zabris. 342 ; 2 Greenl. Ev., § 625.)

VII. Damage is the loss or diminution of what is a man's own, occasioned by the fault of another. (1 Ruthf. Institutes, B. 1, Ch. 17, § 1, p. 200.) Damage must be the natural consequence of the act complained of. (1 Dana, 378 ; 2 Greenl. Ev., §§ 256, 261.) Damage occasioned by the interference of the plaintiff is *damnum absque injuria.* (2 B. Monroe, 212 ; 1 Phil. Ev. 140, 2 ed.; 2 Starkie, 143 ; 3 Starkie's Ev. 1310 ; 2 Phil. Ev. 155.)

*John Bush*, for respondent.

BATES, Judge, delivered the opinion of the court.

This was a suit to recover damages for the unlawful seizure and sale of a negro boy. The defendant attempted to justify his acts upon the ground that he was marshal and ex-officio collector of the town of Farmington, and acted in performance of his duty as such collector, as the means of col-

lecting a tax which the plaintiff owed that town. It appears that the town of Farmington was incorporated by the county court of St. François county, under the act of the General Assembly which gave to county courts that power, and that the trustees of the town had passed an ordinance which required the collector to seize and sell personal property of persons who refused to pay the taxes assessed against them; that the plaintiff had refused to pay a tax assessed against him; that the defendant then seized the negro boy and proceeded to sell him, when one Hunt (a brother-in-law of the plaintiff) bought the boy. The negro was never in fact taken from the plaintiff, but when the defendant told the plaintiff that he must have the money or that he would levy on property, the plaintiff pointed out the negro as the property to be seized (at the same time protesting against the legality of the seizure) and retained the boy in his own possession by giving the defendant a bond to produce the boy at the sale. He did produce him, and the defendant put him up at auction, and sold him to Hunt. The negro then returned to the plaintiff and remained in his possession under an agreement with Hunt, that he (the plaintiff) would pay Hunt hire for him, and afterward the plaintiff bought the negro from Hunt. At the sale the plaintiff gave public notice of the illegality of the sale, and warned the persons present not to buy, because they would get no title to the negro. A large portion of the money for which the negro was sold, was paid to the plaintiff by the defendant. There was verdict and judgment for the plaintiff, and the defendant appealed.

The first instruction given by the court in effect declared, that the seizure and sale by the marshal, without a judgment of a court, was illegal, and that the plaintiff might recover the damages which he may have sustained by the seizure and sale. This instruction stated the law correctly. Although the town ordinance authorized the seizure and sale, yet the general laws under which the town was incorporated did not give it authority to pass the ordinance.

The act of the General Assembly gave to the town the

Alexander v. Helber.

power to levy and collect taxes; and another section of the law (14th) provided that, " if any person fail to pay any tax levied on his real or personal property, the town collector may recover the same by civil action, in the name of the corporation, before any court of competent jurisdiction." It is unnecessary to inquire nicely as to the means for enforcing the collection which the town could employ under the general power granted to it " to levy and collect taxes," because the provision for the collection by means of a civil action having been made, other modes of enforcing the payment of taxes are thereby excluded and forbidden.

This determines the most important point in the case, in favor of the judgment of the lower court; but that court, in some minor matters, so erred as to make it necessary to reverse its judgment. The court, by striking out an answer filed by the defendant and by instructions given at the trial, in effect decided that the measure of the plaintiff's damages was the *value* of the negro with interest, deducting therefrom the money repaid to the plaintiff, but without deducting the amount of the taxes retained by the defendant.

1. Assuming that the value of the negro, with proper deductions from that value, is the correct measure of the plaintiff's damages, yet the amount of the taxes should have formed a part of the deduction. As a mere trespasser, A. has no right to take the property of B. and apply it to the payment of B.'s debt, and in a suit by B. against A., that application of it would not mitigate the damages which B. could recover; but the authorities seem to make an exception in the case of an officer, who commits a trespass by an honest mistake and in the discharge of what he believed to be his duty, and to mitigate the damages by the amount of the tax or debt of the plaintiff which was paid by the defendant.

2. The second instruction given states too absolutely, that the measure of damages is the value of the negro, with interest (subject to deductions). The case as shown in the record has several aspects, and whilst in some of them the value (with deductions) is the measure of damages, in at

least one other it is not; that is, if the plaintiff were himself the purchaser of the negro, through the agency of Hunt, then the value of the negro is not the measure, but the price bid at the sale is (with deductions); and the instruction was so worded as to fail to give the defendant the full benefit of a consideration of this aspect of the case.

My individual opinion is, that there was also another aspect of the case in which the value was not the measure of damages; that is, if the plaintiff after the sale had the possession of the negro, and knowing as he did, that Hunt had no title to the negro, voluntarily and unnecessarily bought the negro from Hunt, he cannot be said to have lost the negro (or the price paid Hunt for the negro); and if the negro was not lost to him, of course the measure of damages is not the value. He may be entitled to full compensation for all the injury which he has sustained by the acts of the defendant, but not for the injury sustained by means of his own voluntary acts.

In the answer (which was stricken out) there were some immaterial averments which might have been stricken out, but there were other matters also which were properly pleadable in mitigation of damages.

With the concurrence of Judges Bay and Dryden, the judgment is reversed and the cause remanded.