KANSAS CITY and TRAVELERS INSURANCE COMPANY, Appellants, v. RICHARD H. FIELD.

Division One, December 2, 1920.

1. **LIEN FOR TAXES: Enforcible in Equity.** A lien for taxes is purely statutory, and its enforcement in equity is not only unusual, but was unknown to the original jurisdiction of equity. And while it may be conceded that, if a lien for taxes is given by statute and no statutory method to make it effective is provided, or if a method is provided but it proves inadequate, chancery can take jurisdiction to prevent the lien from failing, it cannot do so where a plain, adequate and complete statutory remedy for enforcing it is provided.

2. ——————: ——————: **The Right Doctrine.** The true doctrine is that if a statute gives a lien for taxes and provides no particular mode of enforcing it, equity will supply a remedy; but if a statutory method of collecting the tax is provided, especially if it is adequate and complete, equity is without jurisdiction.

3. ——————: ——————: **Kansas City Charter: Limitations.** The charter of Kansas City of 1898 provided for the impaneling of a jury to make assessment of benefits against property in the benefit district, for a judgment on the verdict and for an execution on the judgment to collect the confirmed assessments, and thereby provided an adequate remedy for the collection of the special taxes, and therefore a suit in equity to enforce the tax lien is not available; nor does the fact that execution was issued, and proved ineffective because not issued for more than ten years after judgment was rendered, give to a court of equity jurisdiction to enforce a lien for the taxes.

4. ——————: ——————: **Lien Arising from Verdict.** Under the Charter of Kansas City of 1898 a lien for the special taxes assessed by the jury for the creation of a public park did not arise from the verdict independently of the judgment, but execution on the judgment was available in case of default in paying the taxes, and therefore a lien for the taxes cannot be enforced by chancery.

5. ——————: ——————: **Unmatured Installments: Failure of Lien.** The argument for equitable relief for the unmatured installments of a benefit assessment is no stronger than it is for those in default when the execution was issued and failed because not issued within ten years after judgment. The execution being for the total amount of the installments, accrued and to accrue, and nothing being collected because the period for issuing execution had expired, equity cannot enforce a lien for the installments that have not matured when the suit is brought.

6. ——————: ——————: ——————: ——————: **Limitations: Special and General.** The fact that some of the installments of the benefit assessment had not matured at the time the suit in equity was brought to enforce a tax lien on the property, and that the city charter provided that the lien was to continue until the assessment was paid in full, does not affect the fact that equity is not available, where execution was issued and failed because not issued within ten years, execution on the judgment for all the installments being the charter method of collecting the tax. The assessment lien will not continue so as to be enforcible if the holder permits the judgment to remain unexecuted, with nothing paid on it, for ten years. The general limitation laws are applicable to such judgment, notwithstanding the charter says that liens for assessments shall continue until they are paid.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas*, Judge.

AFFIRMED.

*E. M. Harber, Benjamin M. Powers, Delbert J. Haff* and *Charles W. German* for appellants; *Haff, Meservey, German* and *Michaels* of counsel.

(1) Under the Charter of Kansas City in force at the time of these proceedings (Sec. 20, Art. X, p. 180, Charter 1898), the lien of the assessments involved herein attached from the date of the taking effect of the ordinance and continued until paid or collected in full, both principal and interest. Charter 1898, p. 177, Art. X, sec. 16; p. 178, Art. X, sec. 17; p. 180, Art. X, secs. 20, 21; St. Louis v. Brinckwirth, 204 Mo. 280; Pleadwell v. Glass Co., 151 Mo. App. 51; City of Kansas v. Payne, 71 Mo. 159.    (2) There being a lien, the court has jurisdiction to foreclose it in an appropriate action brought for that purpose. Lockett v. Robinson, 31 Fla. 134, 20 L. R. A. 67; Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81; Armstrong Cork Co. v. Merchants' Refrigerating Co., 184 Fed. 199; Sheffield Furnace Co. v. Witherow, 149 U. S. 573, 37 L. Ed. 853; Gilchrist v. Railroad Co., 58 Fed. 708; Evans v. Silvey & Co., 42 So. 62; Enslen v. Wheeler, 13 So. 473; Kreling v. Kreling, 50 Pac. 546; Provolt v. Railway Co., 69 Mo. 633; Duncan v. Mo. Pac. Ry., 22 Mo. App. 614; Wells County v. McHenry, 74 N. W. 241.    (3) The lien of the assessment of benefits is unaffected by the decision of this court that execution cannot issue on the judgment of confirmation. Sec. 2125, R. S. 1909; Riley's Adm. v. McCord's Adm., 21 Mo. 285, 24 Mo. 265; Board of Trustees v. Fry and Woods, 192 Mo. 552; Boyd v. Ellis, 107 Mo. 394; Fleckenstein v. Baxter, 114 Mo. 493; Sec. 2828, R. S. 1909; Sec. 2837, R. S. 1909;

Keith & Perry Coal Co. v. Bingham, 97 Mo. 196; Wolff v. Ward, 104 Mo. 127; Hannah v. Davies, 112 Mo. 599; Trust Co. v. McDonald, 146 Mo. 467; State ex rel. v. Evans, 176 Mo. 310; Brim v. Fleming, 135 Mo. 597; Pratt v. Clark, 57 Mo. 189. (4) Statutes of limitation or repose do not effect the lien of the assessments involved. St. Louis v. Gleason, 15 Mo. App. 25, 93 Mo. 33; Kansas City v. Marsh Oil Co., 140 Mo. 458; Kansas City v. Bacon, 147 Mo. 259; Meier v. St. Louis, 180 Mo. 391; Morrow v. Kansas City, 186 Mo. 675; Barber Asphalt Paving Co. v. Meservey, 103 Mo. App. 186; Brunn v. Kansas City, 216 Mo. 108; Stanton v. Thompson, 234 Mo. 7; State ex rel. v. Seehorn, 246 Mo. 541; Barber Asphalt Paving Co. v. Hayward, 248 Mo. 280; Kansas City v. Woerishoeffer, 249 Mo. 1; R. S. 1909, secs. 8738, 9270; Laws 1911, pp. 342, 345; Laws 1913, pp. 290, 489; Rabshul v. Lack, 35 Mo. 316; Gilsonite Construction Co. v. Coal Co., 205 Mo. 49.

*John H. Lucas, Enward J. White* and *Cyrus Crane* for respondent.

(1) The city charter provided for enforcement of the assessment by execution on the judgment. Kansas City Charter, 1898, sec. 17, p. 178; sec. 21, p. 182 (2) There is no remedy provided in said city charter (or by statute) for the enforcement of the alleged assessment by suit, or otherwise than by execution on the judgment on the verdict. The charter having thus provided for the enforcement of the alleged assessment by execution, and not having provided any other remedy therefor, the alleged assessment cannot be enforced by this suit or by any suit at law or in equity thereon. Carondalet v. Picot, 38 Mo. 125; Alexander v. Hebler, 35 Mo. 341; State ex rel. v. Goodnow, 80 Mo. 271; Moberly v. White, 19 Mo. App. 269; Jamison v. Harvey, 147 Mo. App. 145; Chandler v. Railroad, 251 Mo. 600; Com-

mission Co. v. Spencer, 205 Mo. 119; Ridlick v. Governor, 1 Mo. 147. (a) This is only the rule of *strictissimi juris* which always applies to a statutory remedy on a statutory liability. Ridlick v. Governor, 1 Mo. 147; Construction Co. v. Spencer, 205 Mo. 119; Chandler v. Rairoad, 251 Mo. 600. (b) And this strict rule also negatives the claim or suggestion of plaintiffs that the last clause of Section 21, Article X, of the charter, giving a right to enforce all of the installments of the assessment for default of any installment, makes each installment of the assessment a separate and successive cause of action as each comes due. This claim of plaintiffs is entirely unfounded and is contrary to the express provision of Sections 17 and 21, making all of the installments become as one entire assessment, and plaintiffs can have no say thereon. (c) No fact or matter is alleged in the petition to make this suit a case in equity. Carondelet v. Picot, 38 Mo. 125; Jamison v. Harvey, 147 Mo. App. 145; Marshall v. Wabash Ry. Co., 201 Mich. 167; Scott v. Brew. Co., 256 Pa. 158; Seibert v. Copp, 62 Mo. 186; Comm. Co. v. Spencer, 205 Mo. 119. (d) The ground, and the only ground, urged by plaintiffs to make this a suit in equity, is that they have lost the right to an execution by lapse of time. Loss of right to enforce the alleged assessment, by execution, under Sec. 1912, R. S. 1909 (and Kansas City v. Field, 270 Mo. 500), created no equitable right on which to maintain this suit. Baner v. Gray, 18 Mo. App. 173; 16 Cyc. 38, 39, 40; Wells Lbr. Co. v. Menominee Lbr. Co., 168 N. W. 1011; Scott v. Waynesburg B. Co., 256 Pa. 158. (f) And surely the plaintiffs' unconscionable laches in not bringing this suit for the enforcement of said assessment and the penalty thereon of fifteen per cent per annum, until more than thirteen years after the alleged cause of action accrued on the entire assessment, cannot appeal strongly to a court of equity as a reason for allowing this suit to be maintained. "It is a universal rule in equity never to enforce either

a penalty or forfeiture.'' 2 Story, Eq. Jur. secs. 1319, 1494, 1509; Watts v. Watts, 11 Mo. 547; Cooley v. Lovewell, 95 Ark. 567; Cooley v. Lovewell, 130 S. W. 574; Hendrix v. Black, 201 S. W. 283, Annotated L. R. A. 1918D, 217; United States v. White, 17 Fed. 565; Fletcher v. United States, 20 Fed. 345. (g) Appellants' brief admits that an execution was issued for the collection of the alleged assessment before this suit was filed. To allow this suit for the alleged assessment to be maintained, would be to allow the plaintiffs to vex defendant again for the same alleged cause of action, contrary to the fine principles of equity and the maxim *nemo bis vexari pro una et eadem causa.* Rogers v. Brown, 61 Mo. 187; Perry v. Craig, 3 Mo. 516; Kline v. Vogel, 90 Mo. 240; Lewis v. Schwenn, 93 Mo. 26, 31; Faris v. Moore, 256 Mo. 123. (3) The defense of *res adjudicata* is that the judgment of the circuit court quashed the execution issued on the same judgment here sued on, on the ground that said judgment was null and void and conclusively presumed to be paid, under Sec. 1912, R. S. 1909, and the decisions of this court thereon. This point is unanswered and unanswerable by plaintiffs. In Kansas City v. Field, 270 Mo. 500, this court held that the judgment on the alleged assessment was conclusively presumed to be paid, and ordered the circuit court to quash the execution issued on said judgment, because said execution was issued more than ten years after the date of the original rendition of said judgment, when said judgment had not been revived, and no payment had been made thereon. Section 1912, there construed, expressly includes ''every judgment, order or decree of any court of record,'' and expressly makes the same conclusive presumption of payment of the judgment, in any suit brought on the judgment after the prescribed lapse of time, as it makes against the issue of execution, to-wit, that: ''Such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit

be brought, had or maintained thereon for any purpose whatever." Could this statute be made plainer? (a) But to avoid the presumption of payment raised by said Section 1912, plaintiffs claim that this suit is on the assessment made in the verdict of the jury, and is not on the judgment on the verdict. Plaintiffs made the same erroneous point and argument in the other cases to sustain the execution issued on the same judgment, but the point was properly ruled against the city because it ignored entirely the provisions in Section 17 of Article X of the charter. The verdict for the assessment is like any other verdict of a jury *in fieri,* not full born, only a tentative thing, without efficiency until the entire required judgment of the court is entered thereon. Oklahoma City v. McMaster, 196 U. S. 533. Said Section 17 expressly provides for the "issue of execution on the judgment," and the city charter nowhere provides for the issue of execution on the assessment in the verdict. The circuit court having awarded the city judgment in full compliance with said Section 17, the plaintiffs cannot have another judgment on the same assessment for the reason that said cause of action was wholly merged in the judgment rendered. Wycoff v. Hotel Co., 146 Mo. App. 554; Gains v. Miller, 111 U. S. 399; City of Harper v. Daines, 211 Fed. 58; Spellman v. Chaffee, 5 Colo. 243; Crittenden v. Leitensdorfer, 35 Mo. 243; Broom's Legal Maxims (8 Ed.), p. 331; Schuler v. Israel, 120 U. S. 506; Winham v. Kline, 77 Mo. App. 46. (4) And the bar of this suit by the State's Statutes of Limitations is not at all affected by the provision in Section 20 of the Charter Park Law, making and continuing the alleged assessment a lien upon the property until all of the assessment was paid. Seibert v. Copp, 62 Mo. 187; Nevada v. Mining Co., 14 Nev. 220; San Deigo v. Higgins, 115 Cal. 170-2; San Francisco v. Jones, 20 Fed. 188; Board of Commrs. v. Storey, 26 Mont. 517; Kansas City v. Field, 270 Mo. 500. Section 20 (Article X of said city charter), in providing

that "said lien shall continue against each lot or parcel of land until the assessment against said lot or parcel has been paid or collected in full, both principal and interest," was probably intended to avoid a loss of the lien, which otherwise might occur under the three year Statute of Limitations of judgments. (Sec. 2125). Eysell v. St. Louis, 168 Mo. 607; Fidelity Dep. Co. v. Churchman, 189 Mo. 472; Crittenden v. Leitensdorfer, 35 Mo. 243; Ins. Co. v. Hill, 17 Mo. App. 590.

GOODE, J.—The pleadings in this case are a petition, filed February 23, 1918, and an answer, and both parties having moved for judgment on them, the defendant prevailed.

The defendant is the owner of two parcels of land, being the west fifty-two feet of the south sixteen feet of Lot Thirteen and the west fifty-two feet of Lot Fourteen in Coffman's Addition to Kansas City. Those parcels lie in what is denominated in the petition the West Park District in Kansas City.

On April 3, 1899, the Board of Park Commissioners of said city adopted a resolution by which certain of the lands in the West Park District were designated to be constituted into a public park called "West Terrace," as provided in Article X of the charter of Kansas City which was then in force. Pursuant to the recommendation of the Board of Park Commissioners, the Common Council of Kansas City, by an ordinance numbered 11430, approved April 5, 1899, provided for the condemnation for park purposes of the lands which the Board of Park Commissioners had designated to compose West Terrace Park, and provided further that the property so condemned should be paid for by special assessments upon real estate; that all private property in the West Park District should be deemed benefited by the improvements therein proposed, and should be assessed and charged to pay for the improvements; that the assessments should be made payable in twenty equal annual

installments in accordance with the charter, with other provisions not necessary to state regarding the rate of interest the installments should bear, depending upon when they were paid. Those provisions of the said ordinance number 11430 were in accordance with the recommendations of the Board of Park Commissioners and with Sections 7 and 21 of Article X of the charter.

On June 3, 1899, the Board of Park Commissioners caused a certified copy of the ordinance to be filed in the office of the clerk of the Circuit Court of Jackson County, at Kansas City, and said court, by an order duly entered of record, appointed a day and place to impanel a jury to ascertain the compensation for the property to be taken or damaged for said improvements, and to make assessments to pay therefor.

Notice was given to all the owners of property in the West Park District, including the defendant Field, and subsequently a jury was impaneled and a trial had to ascertain the damages to be paid and benefits to be assessed on account of the improvements. The result of the trial was that a verdict was rendered in which benefit to the amount of $92.83 was assessed against the above described lots of the defendant, and the court thereupon adjudged that Kansas City recover in twenty equal annual installments the amount assessed against said property in the verdict. The first installment became due May 31, 1901, and the successive installments on the 31st day of each succeeding May until all were paid, together with interest at designated rates according to the times when the installments were paid, unless they were all paid within sixty days from June 19, 1900, the date of the judgment, in which event they would draw no interest.

The court further adjudged that the several parcels of land assessed to pay for the improvements, including defendant's parcels should be charged with a lien for the installments and the interest which might accrue on them, and that the collection of the installments might be enforced by a special execution against the lots as-

sessed, upon the filing of a statement by the City Treasurer of Kansas City with the clerk of the Board of Park Commissioners, showing what assessments remained unpaid and against what lots.

The petition further recites that several appeals were taken from the judgment to the Supreme Court, but were all dismissed by the Supreme Court on June 30, 1903, and the judgment of the circuit court affirmed, and that on the 13th day of July, 1903, the mandate of the Supreme Court dismissing the said appeals and affirming the judgment was filed in the Circuit Court of Jackson County, Missouri.

The first installment of the assessment against defendant's lots fell due May 31, 1904, but was not paid within three months thereafter, and according to the judgment of the circuit court all the unpaid installments and interest thereon at the rate of fifteen per cent per annum from May 31, 1904, became collectible. Neither were any of the other installments paid. By the charter of Kansas City the assessment for benefit accruing to the lots from the new park became a lien on the lots from April 5, 1899, as the petition avers, with a further averment that the same, with interest, is still a lien.

No special execution was issued to enforce the collection of the installments within ten years after the judgment was affirmed by this court on June 30, 1903. The petition says no such execution can now be issued and that the charter of Kansas City provides no special method of enforcing the lien. Wherefore it is said that plaintiffs have no adequate remedy at law, or any remedy, except this proceeding in equity to enforce the lien.

The interest of the Travelers Insurance Company, which is one of the plaintiffs in the case, is derived, according to the petition, from the following facts: On September 12, 1903, the City Treasurer of Kansas City issued park-fund certificates for the total amount of the assessments shown in the aforesaid verdict of the jury, as it was provided in the charter of the city might be

done, and thereafter said certificates were sold to the Travelers Insurance Company, which is the owner and holder of them.

The prayer is for a judgment against the defendant for said sum of $92.83, together with interest at certain rates, that the said judgment be declared to be a lien on the aforesaid lots of defendant, and that they be sold to pay the judgment, and for other proper relief. Such, in substance, is the petition.

The answer denied the allegation that the assessment against the said lots was a lien on them, or that they were bound for the payment of said assessment when the petition was filed.

As the basis of this defense the answer says this court on March 16, 1917, in a proceeding in which all parties to this present suit were parties, determined that the alleged judgment sued on in the present case was null and void and was presumed to be paid and satisfied under Section 1912, Revised Statutes 1909; that this court ordered the Jackson County Circuit Court to sustain the motion of the defendant to quash the execution which had been issued by said court on July 12, 1913, on said judgment, and that pursuant thereto said circuit court on April 16, 1917, made and entered its final order and judgment in said cause, sustaining the motion and quashing the execution.

Besides that defense, the answer avers the plaintiffs did not commence this suit or any civil action on the alleged assessment, or any installment thereof, within either five or ten years after the cause of action accrued; that the judgment was not revived, or any execution, issued thereon, or any payment made thereon at any time within ten years after its rendition.

Furthermore that the defendant, for more than ten years after the commencement of this suit, had been in the actual, continuous, exclusive and adverse possession of the lots, claiming to own the same as against all persons, and as against the lien and claim of the alleged as-

sessment and judgment sued on, and had paid all the taxes, state, county and municpial, on the lots during said period.

Further that if the plaintiffs, or either of them, ever had any cause of action in equity against the defendant, they had lost their right of action by laches, because of the fact that the cause of action, if any there was, accrued more than thirteen years before this suit was commenced, and during said time the alleged judgment bore interest at the unconscionable rate of fifteen per cent per annum.

The court overruled the motion of plaintiffs for judgment on the pleadings, the substance of which we have stated, and sustained that of the defendant. The plaintiff took this appeal.

Parts of the Charter of Kansas City, of 1898, are relevant to the appeal and we epitomize them in this statement of the case.

Said charter provided that parks, etc., might be paid for by special assessments on the real estate situated in the park district and benefited by the improvements, and that the special assessments might be made payable at such time or times as the Common Council should provide by ordinance upon the recommendation of the Board of Park Commissioners; further that the Common Council should by ordinance describe the property to be purchased, taken or damaged in the course of improvement, and designate the time and mode of payment of the special assessments against benefited property, and that the proceedings for the taking and damaging of such private property for public use, and the assessment of benefits, should be heard and determined by the Circuit Court of Jackson County.

The court procedure was prescribed; among other things that the court should appoint a day and place to impanel a jury to ascertain the compensation for the property purchased, taken or damaged, and to make assessments to pay the compensation; also for notice to property owners to be affected.

The verdict was required to show the amount of benefit assessed against each piece of private property found benefited within the district. The jury could not be discharged until its verdict had been reviewed by the court and found to be correct in form and not to need the correction of errors.

The court within four days after the verdict was returned could set it aside for good cause, and impanel a new jury to make another assessment. A further provision was that, unless set aside, the verdict was to "be confirmed and judgment entered thereon that the city have and hold the property sought to be taken upon payment of the compensation assessed therefor, for the purpose specified in the ordinance providing for said improvement, and that the city pay the benefits assessed against said city, that the city recover the respective amount assessed against the private property, and that the several lots and parcels of private property so assessed to pay compensation by the verdict, stand severally charged and be bound for the payment of the respective assessments and the interest that may accrue thereon; and if said assessments are, by the ordinance aforesaid, made payable in more than one installment, the judgment shall so recite. Such judgment shall be by the clerk docketed and indexed in the books used for that purpose. And if such assessment, or any portion thereof, against any tract or parcel assessed, or any portion thereof, be not paid and discharged when the same becomes due or collectible, and shall be in default as hereinafter provided, the collection of the same may be enforced by special execution or executions against the lot, tract or parcel of land charged with the lien thereof; and such execution or executions shall issue upon the filing of a statement of the City Treasurer with the clerk of the court, showing what assessments are unpaid and collectible, and against what lots or parcels of land and the amount or amounts due and collectible thereon." Proceedings under the execution were to conform to the

proceedings on ordinary judgments foreclosing liens on lands as far as practicable, and recitals the executions should contain were stated.

After the verdict of the jury had been returned into court and confirmed, the clerk of the court was required to deliver a copy of it to the City Treasurer and another copy to the City Auditor, and the assessments for benefits against private property contained in the verdict became liens from the date of the taking effect of the ordinance in pursuance with which the assessments were made, and those attached to the several lots or parcels of land assessed with benefits.

The charter declared the lien should "continue against each lot or parcel assessed until the assessment against such lot or parcel shall have been paid in full, both principal and interest."

Regarding the distribution of the assessment over a period of years, the charter said this might be done by providing for payments in such number of annual installments as the Comon Council might determine; that the first installment be payable on the 31st day of May, following confirmation of the verdict by the circuit court, and the successive installments on the 31st day of each succeeding May, until all were paid; that installments might be paid without interest within sixty days after judgment or confirmation of the verdict; that if not so paid they should bear interest at the rate of seven per cent per annum from the date of said judgment until maturity; that the owner of the property assessed should have the privilege of paying the assessment in full, or any installment of it at any time by paying all the interest to a date six months after date of payment, etc. Further that all installments and interest on them not paid at maturity should bear interest at the rate of fifteen per cent per annum until paid; that if any installment, or the interest on any installment, was not paid at maturity and remained in default for three months after maturity, then all the un-

paid installments and interest should be collectible, together with interest thereon, at the rate of fifteen per cent per annum from the date of maturity of said interest in default; and special execution or executions might issue as aforesaid for the collection of all installments unpaid, and the costs of such collection. It was provided, however, that the owner or party interested might pay to the City Treasurer at any time before execution was issued against his land, the amount of the installment or installments in default, with interest thereon at the rate of fifteen per cent, in which case the installments not then due should not be affected by such default. [Those matters are to be found in the Charter of 1898, Sections 5 to 21, inclusive, Article X, pages 168 et seq.]

I.  The purpose of this proceeding, which is in the nature of a suit in equity, was to enforce the lien of the assessment against defendant's lots for the park,

Tax Lien: Enforcement in Equity. on the theory that said lien still exists, and the question for decision is whether the equity jurisdiction of the circuit court could be invoked for that purpose.

The argument that it could be, runs in this way: That the charter of Kansas City provided the lien of the assessments should continue against the lots until the assessment against them had been paid or collected in full, both principal and interest (Charter 1898, p. 180, sec. 20); that this lien created by the verdict of the jury was independent of any lien that may have been incident to the judgment confirming the verdict; that the method prescribed in the charter for collecting the assessment by an execution issued upon the judgment, was not an exclusive mode of collecting the assessment, for the reason that the execution thus authorized was only in aid of the judgment and to make it effective and neither related to the lien created by the assessment laid against the lots by the verdict of the jury, nor was intended for the enforcement of that

lien; that no remedy was provided in the charter for the enforcement of the latter lien, and, therefore, inasmuch as courts of equity have a general jurisdiction to enforce liens, particularly where there is no adequate legal remedy, the equity jurisdiction could be invoked in the present case to enforce the lien of the assessment.

Without saying that no court has held equity has inherent jurisdiction to enforce against lands a lien for special or general taxes, when a mode of enforcement has been provided by statute, we say we have found no clear decision that it has, made in a case where the question was presented without circumstances that called for equitable relief according to the ordinary principles on which courts of chancery have cognizance of causes. Jurisdiction has been said occasionally to exist where a statute gave a lien without prescribing a remedy to enforce it, and this on the theory that the legislature intended the lien should be rendered effective by the procedure usually allowed to give effect to liens, whether the proper procedure be legal or equitable. [1 Cooley, Taxation (3 Ed.), p. 17.]

We will take the pains to review the decisions on the question that we have found, as we deem the case important enough to deserve this labor.

The courts of Tennessee have gone further than those of the other states toward holding liens for either general taxes or special assessments, may be enforced in equity. This procedure is a sequel to an early decision in Tennessee that a tax was a debt owed by the taxpayer, and as no special procedure had been provided to collect the debt it might be collected as any other could be; or, if there was a lien for it, the lien could be proceeded on as in the case of other liens. This doctrine runs back to Mayor v. McKee, 2 Yerger, 167, decided in 1826. That case was an action at law to recover the tax sued for as being a debt due to the town of Jonesboro.

Some of the suits in equity to collect taxes involved complications which made the legal remedy inadequate. [State v. Duncan, 3 Lea, 679; Webb v. Miller, 8 Heiskel, 448; Edgefield v. Brien, 3 Tenn. Ch. 673.] Others were supported by a statute making a lien for taxes "enforcible as other liens" by a suit in equity. [Nashville v. Cowan, 10 Lea, 209, 211; Chadwell v. Jones, 1 Tenn. Ch. 493.] If the Tennessee chancery courts give equitable relief in cases of liens for taxes concurrent with an adequate legal remedy, their rule is as much opposed to the one generally accepted as is the doctrine that a tax is a debt. [1 Cooley, Taxation, p. 17, et seq.]

In Grant v. Bartholomew, 57 Neb. 673, 691, a suit in equity was upheld on an express statute which declared the owner of a certificate of purchase at a tax sale, should be the owner of all the liens for taxes which the public had on the land described in the certificate, and might foreclose the certificate as a mortgage could be foreclosed. The opinion says it seems the right of a county to maintain a suit in equity to foreclose a lien for taxes exists independently of statute; and in support of the *dictum* the cases next following are cited, with the remark that "these causes rest upon the principle that the grant of a lien in any given case, of necessity carries with it all the usual modes of enforcing it known to the law." [McInerny v. Reed, 23 Iowa, 410; Mayor v. Colgate, 2 Kernan (N. Y.) 140; United States v. Pac. Ry. Co., 4 Dill. (U. S.) 66.] But the enforcement of tax liens in equity is not only unusual; it was unknown to the original jurisdiction of equity, for such a lien is purely statutory. If courts of chancery possessed inherent jurisdiction in such matters, the mere creation of an adequate statutory remedy would not take away their jurisdiction. [Woodward v. Woodward, 148 Mo. 241.] And it may be conceded for the purpose of the argument that, if a lien for taxes is given by statute and no statutory method to make the lien effective is provided, or if a method is provided but it proves to be inadequate, pos-

sibly in a particular case because of its peculiar circumstances, chancery can take jurisdiction to prevent the lien from failing. In our judgment neither of those concessions is applicable to the present case for the reason that a plain, adequate and complete remedy to enforce the lien in question is provided by the charter of Kansas City, a proposition we will advert to later.

Referring to the cases last cited, we observe that in McInerny v. Reed, what was said on the point in hand was a *dictum*, for the court held the plaintiff, who was the assignee of a tax bill, could not maintain a suit in equity upon it, even though the city which issued the bill could have done so. The intimation that the city could maintain such a suit was based on the fact that there was no *mode* provided in the charter to collect the special tax, although the charter conferred on the city *power* to collect it. The argument was that the power should not be treated as nugatory because the charter failed to prescribe a method of exercising it, and therefore resort could be had to equity, as in other instances where a right existed without a remedy at law to maintain it.

In Mayor v. Colgate, a statute authorized the collection of the assessment in like manner as if the lots subject to it were mortgaged to the city.

In a series of Illinois cases suits in equity to establish tax liens were sustained, because a statute authorized the foreclosure of the liens. [Gauen v. Drainage Dist., 131 Ill. 446; People v. Henckler, 137 Ill. 580; People v. Weber, 164 Ill. 412; Hammond v. People, 169 Ill. 551.] The contention in those cases was over the question whether a special tax for improvements fell within the effect of the statute, or whether the relief in equity was restricted to the collection of general taxes. The relief was held to be available for the collection of special assessments, but the court adhered to the doctrine previously declared in People v. Biggins, 96 Ill. 481, "that in the absence of a statute expressly conferring it, a court of chancery has no jurisdiction to entertain a bill for the

foreclosure of a lien upon real estate given by the statute for taxes and assessments levied thereon'' (131 Ill. l. c. 462). That doctrine is the one prevailing generally with perhaps this limitation of it: if a statute gives a lien for taxes and provides no particular mode to enforce the lien, equity will then supply a remedy.

The courts are practically unanimous in holding that if a statutory method of collection is provided, especially if it is adequate and complete, equity is without jurisdiction.

Corbin v. Young, 24 Kan. 198, is a strong authority for that doctrine, as a statute of Kansas permitted the holder of a tax deed whose title was defeated in an action to recover the land, to enforce a lien in said action for the amount of the taxes for which the land had been sold. The case cited was not one to recover possession by the purchaser at a tax sale, but was brought by the purchaser after he had been defeated in his claim of title in a suit to quiet title. He prayed a decree for the taxes and the trial court granted the decree. This judgment was reversed on the ground that equity had no inherent jurisdiction to enforce a lien for taxes, and was therefore without jurisdiction to grant relief in the particular case, because the statute authorizing a decree for taxes in favor of one whose tax title failed, confined the power to give equitable relief to cases brought to recover possession of land and did not extend it to those brought to quiet the title. The court considered the question of the right of holder of a tax lien to foreclose it as he could a mortgage lien, a proposition asserted in the brief of the counsel in the case at bar, but it was denied by the Supreme Court of Kansas.

In Louisville Trust Co. v. Muhlenburg County, 23 S. W. (Ky.) 674, it appeared the taxes levied to pay bonds a county had issued for shares of stock subscribed by the county in a railroad company were made a lien on the real estate of the taxpayers. The method to collect the tax prescribed in the act under which the

subscription was made, proved ineffectual because of the county court's refusal to appoint collectors, etc. Thereupon, the plaintiff, acting for itself and others, fixed a suit against the county and the tax payers to foreclose the lien. The court held this lien was similar to other tax liens and that there was no intention on the part of the Legislature "to afford any additional or extraordinary remedy for its enforcement," saying such liens could not be enforced in courts of equity.

In Greene County v. Murphy, 107 N. C. 36, the Supreme Court of North Carolina spoke dubiously regarding whether a lien for taxes could be made good in equity, even when a method provided by the Legislature to collect them had failed; but held that whatever might be the rule in such a contingency, the statutory remedy must be exhausted first.

In McHenry v. Kidder County, 8 N. D. 413, the action was one to quiet title and was filed by the receivers of the Northern Pacific Railroad Company. The lands, the title to which was involved, had been sold for taxes and bought in by the State for the use of Kidder County. By an act of the Legislature the State had relinquished its title and had relegated to the county the right to bring an action for the taxes for which the lands had been sold. Therefore in the suit to quiet title, the county prayed to have the taxes decreed a valid and perpetual lien upon the lands, in the nature of a mortgage and for foreclosure of the same. After deciding the lien asserted was not of the kind the statutes of North Dakota allowed to be considered in the suit, the court went on to say the same result would be reached in any form of action without reference to technical considerations; that the Legislature had provided a complete remedy for the collection of taxes and the remedy in the nature of a suit to foreclose a mortgage would be superfluous; that the rule was well established which made a statutory remedy exclusive unless there was an express provision for supplementing it by an action, citing Cooley, Taxation, pp. 448, 449.

In Pierce County v. Merrill, 19 Wash. 175, the county and its treasurer sought to enjoin the removal from the State, of personal property on which the county had or claimed a lien for taxes, and for a receiver of the property and to have enough of it sold to pay the county's demand. The lower court granted this relief; but the Supreme Court reversed the judgment, holding the statutes of the State gave a remedy by authorizing the treasurer of the county to seize and sell the property, and that equity had no jurisdiction to collect taxes or appoint a receiver for that purpose.

In Board of Education v. Old Dominion Co., 18 W. Va. 441, the suit was in equity for the collection of school taxes assessed against the lands of the defendant, the tax bills having been fraudulently withheld from the delinquent list by the officials whose duty it was to collect the taxes. After citing certain cases wherein it was decided a tax was a debt for which an action of assumpsit would lie, notwithstanding the statute afforded another remedy, and declaring those decisions were against reason and the decided weight of authority, the court ruled that as the tax was made a lien on the lands by a statute which provided a special mode for selling the lands to satisfy the lien, no suit would lie in equity.

The doctrine of the Federal courts, frequently declared by them, is that both the assessment and collection of taxes are legislative affairs and no function of a court of equity. The previous decisions of the Supreme Court of the United States on this question were reviewed in Thompson v. Allen County., 115 U. S. 550, wherein the remark most pertinent to the present case, and to the effect just stated, is found on page 558.

In several cases passed upon by said Supreme Court and brought to collect municipal taxes, or those levied by county courts to pay interest on county obligations, the usual modes of collecting had failed, either because officials had been remiss or because the munici-

pality had passed out of existence. For such reasons the aid of equity was invoked, but it was ruled consistently that equity had no authority either to levy a tax or to collect it if it had been levied by the proper public officers.

In cases where this court has dealt with the question, it has adhered to the principle that a statutory remedy for the collection of a tax or a special assessment, whether it be by distress or by action, is an exclusive remedy.

In Alexander v. Helber, 35 Mo. 334, a slave had been unlawfully seized by the marshal of the town of Farmington, for taxes due to the town by the owner of the slave. The owner, who was the plaintiff in the case, sued to recover damages for the seizure of his property, and his action was sustained for the reason that the town had been empowered by the Legislature to collect personal taxes by a civil action in any court of competent jurisdiction, and therefore other modes of collecting were excluded and forbidden.

Directly in point is City of Carondelet v. Picot, 38 Mo. 125. Said city had instituted an action against Picot for special taxes assessed for sidewalks and other improvements. Pursuant to the charter the council had passed an ordinance providing an apportionment of the cost of the improvements against the abutting lots and declaring a lien against the property assessed. After repudiating the doctrine that a tax was a debt or in the nature of a debt, the court held it was an impost levied by government for the support of the State and was not founded on contract or agreement, but operated without the regard to the will of the citizen—in other words, *in invitum*; further held that unless the power to sue for taxes was delegated or expressed it did not exist and they could not be turned into judgments; that the municipalities of the State had been given a remedy to collect assessments by a summary process, and as it was complete and ample, "it would be monstrous

without plain and express authority to that effect, to say that they could abandon at pleasure the usual and simple manner of making collections, and subject the delinquent taxpayer to all the harassments, vexations and costs of a legal proceeding.''

The doctrine stated by all the text-writers on the subject is in accord with that declared by this court in the cited cases. [1 Cooley, Taxation (3 Ed.), p. 17; 2 Cooley, Taxation, pp. 879, 881.] In that text it is said the remedy by suit exists only by force of a statute and the statute must therefore be carefully followed. Another text says that where a statute has prescribed proceedings for the enforcement of taxes and the foreclosure of tax liens, the holder of such a lien cannot foreclose it as he would a mortgage in a court of equity, or otherwise than according to the statutory remedy. [21 Ency. Pl. & Pr. 388.] Still another treatise says the lien of a tax warrant unpaid has sometimes been held ground for a proceeding in equity, but as a general rule the powers of a court of chancery cannot be invoked in such matters except on the ground of fraud, trust or some other well-recognized head of equity jurisdiction. [37 Cyc. 1242, and cases cited in Note 48.] In a work treating of special taxation, it is said a court of chancery cannot enforce the collection of that character of taxes unless authorized by statute to do so. [2 Page on Taxation by Assessment, sec. 1145, and cases cited in Note 2.]

While at first thought it may appear right for chancery to enforce tax liens, the notion vanishes when we remember that the subject is not within the original cognizance of equity, but pertains to the political branch of the government, and, therefore, according to all analogies, cannot fall within the equity jurisdiction—at least unless the tax is made a lien and no sufficient remedy is provided to make the lien efficacious.

As we have said above, a remedy was provided in the Kansas City charter for the collection of assessments

against the defendant's lots, and an effective one. Whether the judgment entered upon the verdict of the jury, making assessments for improvements, is a judgment in the full sense and with the ordinary incidents of one, we deem an immaterial question in the present case. Whatever may be the nature of the judgment and whether the lien inhered in the assessment itself as declared by the verdict, or in the judgment entered on the verdict, or in both, the lien was not enforcible until a judgment confirming the verdict had been rendered—was at most without vitality or value. But after judgment it became enforcible by an execution, not only for an installment in default, but for all installments thereafter to accrue, together with the interest on them. It is difficult to perceive why the charter should provide for a judgment and an execution on the judgment to collect the confirmed assessment if it was contemplated that, independently of the judgment, *but not until it had been rendered,* the assessment lien might be foreclosed by a decree in equity. If this course was in the mind of the Legislature, why provide for collecting the judgment by an execution containing full recitals of the proceeding instead of remitting the matter to equity? However, regardless of that consideration, the essential fact is that an adequate remedy was given by the charter, and nothing was said about an additional remedy by suit in equity.

Pursuant to the provisions of the charter an execution was issued for the entire amount of the assessment, and the only reason why it failed to prove effective, was that the city did not ask for it for more than ten years after judgment had been rendered in the circuit court and for more than ten years after it had been affirmed in this court. Such being the date of the execution, and there having been nothing paid on the judgment during the ten years, it was held in Kansas City v. Field, 270 Mo. 500, that by virtue of our limitation statutes the judgment was presumed to have been paid and no

execution could issue on it.  [Secs. 1912 and 2133, R. S. 1909].   In that case the question was gone into of whether those limitations were applicable to a proceeding to collect special taxes levied under the Charter of Kansas City.  It was contended they were not because, among other reasons, the charter had been adopted by the people of the city pursuant to constitutional authority, as a scheme for the government of the municipality, and had superseded all laws of the State then in force appertaining to cities of one hundred thousand inhabitants and over.   The provision of the charter that the lien of special assessments should continue against the property assessed until the charge had been paid or collected in full, was argued to lie outside the effect of the statutes limiting the life of judgments. This court held the charter of Kansas City could not supersede the Constitution or the general laws of the State, but must be in accord with them to be valid, and that the two statutes limiting the time wherein executions might be issued applied to executions on judgments of the kind in question.   The exact point in decision was that the judgment was presumed to be paid after ten years and could not be enforced thereafter by an execution, the court having no occasion to decide whether there was a lien arising from the verdict of the jury which was independent of the judgment, and enforcible in equity.  All the arguments for the plaintiffs are based on the theory that such a lien exists, and for want of a statutory remedy to make it effective that they may maintain this suit.  We do not accept that proposition. The source of the lien, or when it began, or how long it continues, are minor considerations, and rather irrelevant to the question of the right to resort to this remedy, when another was given by the act which imposed the lien—another which embraced and enforced to the full extent the lien of all the installments, though they were distributed over twenty years, by making all that were unpaid, whether due or not, collectible if a

default occurred in paying one and continued for three months. The failure of the remedy in the case, was not in consequence of any inadequacy in it, but was due to the plaintiffs omitting to use it within the period when according to the policy of the law, it could be used.

II.   It is insisted that as some of the installments had not yet matured when this suit was begun, by the very words of the charter the lien for them, at least, was still in force, because the lien was made to continue until the assessment was paid in full; that as the statutory remedy by execution has been exhausted and has proved fruitless, equity can be looked to for help in collecting those installments. The argument for equitable relief for the unmatured installments is no stronger than it is for those in default when the execution issued. It was taken out to collect the total amount of the installments, accrued and to accrue. Nothing was collected because the period prescribed for issuing executions had expired, and there was a presumption the judgment had been paid—a conclusive presumption, the statute says. [R. S. 1909, sec. 2125.]   Plaintiffs contend said presumption is raised only against the judgment and an execution on it, not against the lien of the assessment.   Authorities are cited in connection with this proposition wherein courts held that in a conflict between a statute providing for the continuance of a lien for taxes over a stated period and the general Statute of Limitations, the special statute controls.   [Skinner v. Christie, 29 Atl. 772; Lewis v. Rothchild, 28 Pac. 805; Wells County v. McHenry, 74 N. W. 241.]   This was but an application of the general rule of construction that a statute relating to a special subject or remedy prevails, as regards that subject, over general laws, where the two differ in their provisions.   [State v. Green, 87 Mo. 583.] But this court decided in the former case between these parties that the general limitation laws regarding judgments and executions were applicable, notwithstanding

*Unmatured Installments.*

the charter said liens for assessments should continue until the assessments were paid. In truth the charter and the limitation laws stand well together when construed so as to harmonize them, as they should be, if possible. [Strottman v. Railroad, 211 Mo. 227.] The Charter of Kansas City prevents an assessment lien, confirmed by a judgment, from expiring in three years, as the lien of an ordinary judgment does unless revived. [R. S. 1909, sec. 2125.] Usually the assessment lien will continue until the assessment is paid in full, but will not continue so as to be enforced if the holder permits the judgment to remain unexecuted and with nothing paid on it for ten years, any more than a judgment for a debt will be collectible by execution after ten years' default, though in fact the debt remains unpaid.

The distinction is too refined that the statutory limitation, though good against the judgment and executions on it, leaves to the city the right to go into equity to assert the lien, which it might have made effective for the entire assessment by an execution had it availed itself of the remedy the charter gave. On a final analysis this view leads to the doctrine that although there is an adequate statutory remedy to collect an assessment against land, nevertheless equity will afford an additional remedy—a doctrine rejected in this and in nearly all jurisdictions—perhaps in all.

The judgment is affirmed. All concur.