KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant, v. ELIZABETH F. TIERNAN. ELIZABETH WALTERS, THE MUNICIPAL BOND CORPORATION, ALVIN D. HATTEN, Collector of Jackson County, and ARTHUR J. BAXTER.—No. 39763.—202 S. W. (2d) 20.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*David M. Proctor, Benj. M. Powers* and *Lancie L. Watts* for appellant.

*Dwight M. Smith* for respondent.

BRADLEY, C.—Action to determine title to the north 24.75 feet of lot 21, block 9, McGee's Addition,. Kansas City. The trial court adjudged title in defendant Municipal Bond Corporation (hereinafter referred to as the bond corporation) subject to tax liens of plaintiff and the state and county; cancelled the deeds under which plaintiff claims title, and plaintiff appealed.

The facts were in the main stipulated. Plaintiff (appellant) claimed title under two deeds, a city tax deed dated October 31, 1940, made pursuant to a sale for city taxes assessed for the year 1933, recorded November 1, 1940, and a sheriff's deed dated June 10, 1943, made pursuant to a special execution sale under a condemnation judgment in the circuit court entered in proceedings by the city to improve 15th street, and recorded July 2, 1943. Also, plaintiff owns certificates of purchase based upon the sale of said lot for city taxes assessed for the years 1938-1942.

The bond corporation claims title under four city tax deeds made pursuant to the sale of said property for city taxes for the years 1934-1936. The dates of these city tax deeds are not shown, but it is stipulated that they were recorded within 20 days after execution and delivery and that they were respectively recorded November 18, 1941, August 27, 1942, August 28, 1942, October 28, 1944. And the bond corporation says that plaintiff got no title by its city tax deed of October 31, 1940, and that plaintiff's sheriff's deed is void as a muniment of title because the condemnation judgment from which the deed stemmed was barred, when the execution was issued, under Sec. 1038, R. S. 1939, Mo. R. S. A., Sec. 1038, and including a legislative limitation act of 1919, Laws 1919, p. 221.

Before taking up the tax deeds involved we dispose of a point made by plaintiff on the ruling of the trial court as to conceded tax liens of the city, and the state and county. In the prayer of the petition plaintiff says that if the court should find that plaintiff is not the owner of said lot, but that it and the state and county have tax liens thereon, then the court is asked to determine and enforce these liens "by a sale of said real property and a division of the proceeds of the sale among the parties hereto in proportion to their

142

respective interests." Defendant Hatten, county collector, in his answer, asked that the state and county tax liens against said lot be enforced and that said property be sold to satisfy said liens. As to the tax liens of plaintiff city and of the state and county the trial court, as appears, supra, adjudged title in the bond corporation subject to these liens, but held that plaintiff and the county collector had respectively adequate remedy at law to enforce these tax liens, and declined to decree enforcement in the manner asked by plaintiff and the county collector. There is no claim that plaintiff city and the county collector did not have respectively the usual charter and statutory remedy to enforce these tax liens, hence the court correctly held that it did not have jurisdiction in this equity cause to foreclose these tax liens. See Kansas City et al. v. Field, 285 Mo. 253, 226 S. W. 27; State ex rel. Hibbs et al. v. McGee et al., 328 Mo. 1176, 44 S. W. (2d) 36, l. c. 38, and cases there cited; Koch v. Clyce et al., 232 Mo. App. 689, 92 S. W. (2d) 985, l. c. 989.

Did plaintiff city acquire title under its city tax deed of October 31, 1940? It was stipulated that the city, when there were no outside bidders at a sale for delinquent city taxes, bid the property in and a tax deed or certificate of purchase, as the case might be, was issued by the city treasurer to the city and recited the bid, etc., but that the taxes for which the sale was made were transferred back to the "back tax records and carried as delinquent and unpaid taxes", and that such sales were known in the city treasurer's office as "book transactions."

If plaintiff city acquired title by its city tax deed of October 31, 1940, then the property thereafter was exempt from taxation. Sec. 6, Art. X, Constitution 1875. Notwithstanding this constitutional provision and its tax deed plaintiff continued to carry the property involved here on the tax books. The date of the tax sale at which plaintiff got its city tax deed of October 31, 1940, does not appear, but it was some 5 years prior to the date of the deed.

To support the contention that title passed by its city tax deed of October 31, 1940, plaintiff principally relies on State ex rel. City of St. Louis v. Baumann, Collector, 348 Mo. 164, 153 S. W. (2d) 31. In that case the city purchased the land there in question at a city tax sale. The owner did not redeem, and after the period of redemption expired, the city demanded deed. The collector refused to execute deed unless the city paid the taxes due prior and subsequent to the sale. The city brought mandamus to compel the collector to issue deed and was successful. But in that case, so far as appears, the city made a bona fide purchase and not a book transaction as here with the land going back to the delinquent tax books. It is pointed out in the Baumann case that the reason why a city in such situations is not required, when bidding property in, to pay the taxes is Sec. 6,

Art. X of the Constitution mentioned, supra, which exempts from taxation property of the state, counties and municipal corporations.

If the sale for the 1933 taxes had been a bona fide sale and title acquired by the city by its city tax deed of October 31, 1940, then the property, after 1933, was exempt from taxation. Had the property been removed from the tax books when plaintiff bid it in, probably in 1935, there would have been no tax sales for the city taxes accruing over the years 1934-1937 at which sales defendant bond corporation purchased and paid and there would have been no sales for the taxes accruing over the years 1938-1942, at which sales the city acquired its certificates of purchase. We think the ruling in State ex rel. Associated Holding Company v. Shain et al., 335 Mo. 474, 73 S. W. (2d) 391, is pertinent on the validity of plaintiff's city tax deed as a muniment of title. The Shain case, as we term it, was in certiorari to quash an opinion of the court of appeals in Associated Holding Co. v. Carrigg, 228 Mo. App. 208, 65 S. W. (2d) 1059. The Carrigg case was to foreclose the lien of paving tax bills issued by the City of St. Joseph and owned by the holding company. The city was a defendant and claimed that it had a lien superior to that of the holding company by reason of the fact that the property against which the paving tax bills were issued had, subsequent thereto, been sold for city taxes, and that the city bid in the property, but had not issued certificate of purchase. The trial court found for the holding company and the city appealed. The court of appeals reversed and certiorari was granted. The sole question was on the superiority of the respective liens. The writ of certiorari was quashed, and the court, in ruling the question, said [73 S. W. (2d) l. c. 393]:

"The basic fallacy of the relator's position is in treating the transaction in question as a sale. No title passed by that transaction; essentially it was a withdrawal of the property from public sale. The title remained as before, in the record owner. . . ." We rule that plaintiff did not acquire title by its tax deed of October 31, 1940.

■ Did plaintiff acquire title under the sheriff's deed of June 10, 1943? As stated, this deed was made pursuant to a special execution sale under a condemnation judgment in the circuit court. The bond corporation, as stated, contends that this deed is void as a muniment of title because the condemnation judgment upon which the special execution was based was barred, when the execution was issued, by limitation under Sec. 1038 R. S. 1939, Mo. R.S.A., Sec. 1038, and the act of 1919, Laws 1919, p. 221. The condemnation judgment was rendered in the circuit court on December 1, 1928, and the special execution, under which the sale to plaintiff was made, was issued June 2, 1942; sale thereunder June 29, 1942; sheriff's deed executed and delivered June 30, 1943, after one year for redemption. The condemnation case in the circuit court was entitled, "In the matter of proceedings ■ to open, widen, extend and establish 15th

street from the east line of Baltimore Avenue to the west line of Campbell Street." There were several hundred property owners affected, including Elizabeth Tiernan, a defendant in the present case and the then owner of the lot involved here, which lot, with others, was assessed with special benefits. A few of the property owners, not including the then owner of the lot here involved, appealed from the condemnation judgment. That judgment was affirmed by this court May 15, 1930. See Kansas City v. Jones Store Company, 325 Mo. 226, 28 S. W. (2d) 1008; motion for rehearing overruled June 3, 1930; certiorari to the supreme court of the United States was sought, but denied October 20, 1930.

The condemnation judgment of December 1, 1928, provided that "the several lots and parcels of private property so assessed to pay compensation by said verdict herein severally charged and to be bound for the respective assessments and the interest that may accrue thereon are to be paid in ten (10) equal installments, the first of said installments shall be due and payable on the 30th day of June, 1929, and the successive installments shall be due and payable on the 30th day of each succeeding June thereafter until all shall be paid." Such would make the last installment due June 30, 1939.

Sec. 1038 R. S. 1939, Mo. R.S.A., Sec. 1038, to which reference is made, supra, provides: "Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be *conclusively* presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever" (italics ours).

In 1919 the legislature passed the act referred to, supra, Laws 1919, p. 221, which provides: "Whenever in any proceeding instituted by any city in this state for the purchasing, taking or damaging of property for public purposes, provision is made in the judgment in said proceeding for the payment in annual installments of assessments of benefits against property for the purchasing, taking or damaging of property for public purposes, the time within which execution may be issued on the judgment assessing any such benefits shall not expire until two years after the date upon which the last installment shall be due, and default in the payment of any prior installment shall not shorten the time within which such execution may be issued." This

act does not appear in any of the revisions of the statutes. At least, counsel so say, and we do not find it.

Sec. 157, Art. VI of plaintiff's charter provides that "in case of appeal (in a city condemnation proceeding) the judgment appealed from shall stand suspended until the appeal is disposed of, and no interest shall be allowed or collected on the judgment, or on the assessment, until such judgment be affirmed, or appeal be dismissed." Plaintiff says that because of this charter provision limitation did not begin to run as to the judgment until May 15, 1930, when the judgment was affirmed. If such is so, then limitation was tolled over the period from the date of the judgment until its affirmance—1 year, 5 months and 15 days thereafter. This tolled period added to the due date, according to the face of the judgment, of the last installment, June 30, 1939, would make the last installment due December 15, 1940. Then plaintiff would add two years under the 1919 act. This would extend the due date of the last installment to December 15, 1942. Execution, as appears, was issued June 2, 1942, and was therefore timely according to such reasoning. On the other hand, the bond corporation says that the suspension provision of plaintiff's charter cannot operate to toll the statute of limitation as to the condemnation judgment; that the last installment was due June 30, 1939, as by the judgment provided, and that the only possible extension would be the two years under the 1919 act which would extend the due date to June 30, 1941, and that an execution could not be lawfully issued on June 2, 1942, 13 years, 6 months and 1 day from the date of the original rendition of the condemnation judgment.

Plaintiff's contention that by virtue of its charter the condemnation judgment was suspended in the sense that as a judgment it would date as of the date of its affirmance and not the date of its original rendition is not supported by the law. The statute of limitation as to judgments, Sec. 1038, supra, definitely provides that, absent revival or payment thereon, a judgment shall conclusively be presumed to be paid after the expiration of ten years from the *date* of its original rendition, and that no execution shall issue thereon after the lapse of such period. Kansas City v. Field, 270 Mo. 500, 194 S. W. 39, was an appeal from an order overruling a motion to quash an execution based on a condemnation judgment assessing benefits to recoup the city for its outlay in paying for the condemned lands. The order and judgment overruling the motion to quash was reversed and the cause remanded with direction to sustain the motion. The motion to quash was based upon the limitation prescribed by what is now Sec. 1038, supra. In the Field case the city charter was invoked as controlling over what is now Sec. 1038 as to when execution could issue.

In the course of the opinion in the Field case the court said [194 S. W. l. c. 42]: "So long as Kansas City, under its special charter, does not invade the province of general legislation, or attempt

to change the policy of the state as declared in her laws for the people at large, it will not be held to be out of harmony with such laws, notwithstanding the provisions of the special charter may be different from the general statutes prescribed for the government of other cities in their local affairs. . . . The language of the statute under discussion is that the period of 10 years is to be counted 'from the date of the original rendition' of such judgment, and that from and after the expiration of such period no execution may issue thereon. If the word 'original' had not been used, there might be some doubt about the matter. For without this word a debatable question can be mooted as to time of the rendition of a judgment when such judgment is appealed from, but from the use of the word 'original' we have no great difficulty in concluding that no execution may issue upon an unrevived judgment, if 10 years has elapsed from the date of the rendition of such judgment by the circuit court, regardless of whether such judgment was appealed from or not.''

What may be termed the second Field case is Kansas City v. Field, 285 Mo. 253, 226 S. W. 27. That case was a suit in equity to enforce the lien on certain property condemned in the same condemnation judgment as involved in the first Field case, supra. The defense was that under what is now Sec. 1038 the judgment was presumed to be paid, the same as in the first Field case. The trial court in the second Field case, following the ruling in the first Field case, held that the statute controlled over charter provisions. In ruling the second Field case the court said [226 S. W., l. c. 34]:

''Pursuant to the provisions of the charter, an execution was issued for the entire amount of the assessment, and the only reason why it failed to prove effective was that the city did not ask for it for more than 10 years after judgment had been rendered in the circuit court . . . This court held (first Field case) the charter of Kansas City could not supersede the Constitution or the general laws of the state, but must be in accord with them to be valid.'' See also, Schwab v. City of St. Louis, 310 Mo. 116, 274 S. W. 1058; Hedges et al. v. McKittrick (Mo. App.), 153 S. W. (2d) 790; Fischbach Brewing Co. v. City of St. Louis, 337 Mo. 1044, 87 S. W. (2d) 648. We rule that plaintiff's sheriff's deed was void as a muniment of title.

■ We might say that the bond corporation, in the brief, makes some suggestions as to the purpose of the act of 1919, and suggests that it may be a local or special law. ■ At the trial plaintiff called as a witness the ex representative of Jackson County who introduced the bill that became the act of 1919. He said that he introduced the bill at the request of an assistant city counsellor of Kansas City; that ''he told me there had been a decision of the supreme court that made it impossible for them to market the (tax) bills properly with the old statute of limitations, which was outlawing them before they all became entirely due, and he asked me to try to get this bill through

to cut out that apparent incongruity." In the brief the bond corporation says that if the act of 1919 was "passed to cure some situation arising under the Kansas City charter, then, in our opinion, it would clearly be local and special legislation and invalid under subsections 1, 31, 32, 33 of section 53, Art. IV, Constitution" of 1875. Sec. 53, Art. IV says:

"The General Assembly shall not pass any local or special law (subsections 1, 31, 32, 33): (1) Authorizing the creation, extension or impairing of liens: . . . (31) For limitation of actions: (32) Legalizing the unauthorized or invalid acts of any officer or agent of the State, or of any county or municipality thereof. In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject: (33) Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed."

The constitutional validity of the 1919 act was not raised, and if it had been raised, it would not, under the facts, be necessary to rule the question because the condemnation judgment on which plaintiff's sheriff's deed was based was barred, as we have held, under what is now Sec. 1038 *and* the act of 1919 before the execution was issued.

The bond corporation makes the point that if plaintiff's sheriff's deed under the condemnation judgment is valid as a muniment of title, plaintiff's rights thereunder would nevertheless be subordinate to defendant's city tax deeds, because said city tax deeds are based upon taxes levied upon the property subsequent to the condemnation judgment. Since we have held, on other grounds, that plaintiff's sheriff's deed is void as a muniment of title, it is not necessary to rule this point.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.