K. A. CABINESS, Plaintiff-Appellant, v. J. E. BAYNE, JR., and KATH-
LEEN F. BAYNE, his wife, Defendants-Respondents; GEORGE F.
MILLARD and FRANCES R. MILLARD, his wife, Defendants. No.
42556—257 S. W. (2d) 626.

Court en Banc, May 8, 1953.

*Sherman E. Cabiness* and *Walter A. Raymond* for appellant.

*George L. Walker* for respondents.

 ELLISON, J.—This case was reassigned to the writer on January 29, 1953, under Rule 2.07. The plaintiff-appellant, Mrs. Kay A. Cabiness, sues to set aside and cancel a sheriff's certificate of purchase and tax deed issued to the defendant-respondent J. E. Bayne, Jr. covering Lot 55, Resurvey of Lots 906 to 1005, inclusive, Marlborough Heights, an addition to Kansas City, Jackson County. Both adversary parties assert superior title rights or equities in the lot, but under Sec. 140.600, R.S.Mo. 1949, V.A.M.S. [Sec. 11179, R.S.1939] each offers to refund the taxes thereon paid by the other, and both

invoke the Land Tax Collection Law, Chap. 141, R.S. Mo. 1949, V.A.M.S.

The pleadings, record facts and court findings are voluminous. The case was tried on the plaintiff-appellant's second amended petition. The defendant-respondent J. E. Bayne, Jr. filed an answer and second amended counterclaim. The plaintiff-appellant filed an answer to that counterclaim. The defendant-respondent Kathleen F. Bayne filed a separate answer. The defendants [respondents] George F. Millard and wife defaulted. The plaintiff-appellant Cabiness claims title from five different sources, as follows. [From this point on we have numbered the paragraphs of this opinion for convenience in reference].

(1) A quitclaim deed from Kansas City, Missouri, to plaintiff-appellant dated July 8, 1946, recorded in Book B 3870, p. 74, Recorder's Office, conveying its right, title and interest in said Lot 55 and others for a total consideration of $642.69, of which $10.85 was for that lot. The deed recited the title conveyed to plaintiff-appellant was that acquired by the City by sheriff's deed in a Pershing Road Condemnation Proceeding, the judgment therein having been rendered on June 18, 1921, payable in ten annual installments, the last due June 30, 1931. The judgment was never revived and no payments were ever made thereon. The execution on the last installment, under which the sale was made to Kansas City, was issued on October 17, 1933, over twelve years after the rendition of the condemnation judgment. This was stipulated.

(2) A quitclaim deed from Findlay Marlborough Realty Company [the record title owner] dated December 11, 1946, recorded in Book B 4049, p. 408, conveying to plaintiff-appellant its right, title and interest in said Lot 55, and others, for a [628] consideration of $10 and other valuable considerations [exchange of properties], "subject to all taxes, assessments, or conveyances arising out of such taxes or assessments."

(3) A certificate of redemption No. 2808 issued to plaintiff-appellant Cabiness on December 31, 1946, by the Jackson County Collector of Revenue for a consideration of $214.60, of which $57.30 was for Lot 55, stating she had on that date "paid all sums mentioned in Land Trust Suit No. 9, serial number M-767-767" in the circuit court of Jackson County, Missouri at Kansas City, and has "fully redeemed" said Lot 55 from foreclosure therein. Continuing it stated "This certificate does not redeem, pay or release any outstanding Tax Deeds, Tax Certificates, or Special Tax Bills not included in said Land Trust Foreclosure suit."

(4) Said Land Trust foreclosure suit No. 9 was filed on September 28, 1945, and admittedly covered all unpaid general state, county and school taxes for the years 1920-1944, inclusive, and the unpaid general taxes due *Kansas City* for the years 1928-1944, inclusive. The city bid in the land encumbered by these general taxes due to it and took

deeds therefor. Also included in the Land Trust foreclosure suit was a Special Tax Bill No. 162 against said Lot 55 issued under Ordinance No. 5335 for sewer construction, dated November 25, 1939, for the face amount of $109.48. But on a compromise plaintiff-appellant paid only $32.37 for said tax bill. The Land Trust Suit No. 9 went to default judgment on April 5, 1946. On plaintiff-appellant's petition and motion, in view of the payment of said tax bill on said compromise basis, that judgment was set aside by court order on December 2, 1946, as to said Lot 55, and on January 10, 1947 was finally dismissed with respect thereto. Said Special Tax Bill No. 162 was assigned to appellant on April 8, 1947. It is conceded plaintiff's predecessor in title did not intervene in any way in this Land Trust suit.

(5) Plaintiff-appellant's fifth asserted source as a quitclaim deed from Kansas City to her dated April 12, 1947, recorded in Book B 4110, p. 86, conveying its interest in said Lot 55 and other lots for a total consideration of $423.87, of which $57.30 was for said Lot 55 and said redemption certificate of the Land Trust thereon [supra, ¶ 3]. The City's title had been acquired by tax deed for taxes due in 1937 and prior years and for sheriff's deeds in a Flora Avenue Condemnation 75th Street Grade Proceedings. However it was stipulated at the trial with respect to this deed that the City "did not have title to (under?) the sheriff's deed for the Flora Avenue Condemnation and 75th Grading Proceedings."

(6) In addition to the foregoing, plaintiff-appellant Cabiness' petition alleged she had paid and had her tax receipts for all general, state, county, school, city and park taxes for the years 1920 to 1949, inclusive, and that since she had acquired "her fee simple title" to said Lot 55 she had secured the dismissal of various tax bill suits and liens aggregating $884.19.

(7) The title claim of the defendants-respondents Bayne, asserted by counterclaim, was as follows. On April 8, 1935, Kasco Incorporated filed a suit No. 82022 in the Jackson County Circuit Court at Independence to foreclose the lien of a special tax bill No. 960 on said Lot 55 issued on November 29, 1930, for sewer improvements under an ordinance No. 1725 effective June 16, 1930. It claimed to be the owner of said tax bill. The amount thereof was $39.68 payable in four installments of $9.92 each, the last due June 30, 1934, none of which had been paid.

(8) Joined as defendants in that Kasco suit were the Findlay Marlborough Realty Company [supra ¶2], the record title owner of said Lot 55, and divers tax bills holders thereagainst, including Kansas City, the holder of a tax bill under the Pershing Road Condemnation proceeding and a tax deed recorded December 10, 1926. The plaintiff-appellant's petition in the instant case alleges the record in that case No. 82022 [supra ¶7] shows she filed an application to

intervene therein and a motion to dismiss in which the fact was alleged that said Lot 55 was included in the Land Trust Suit No. 9, supra, and prayed the [629] judgment of the court, which application and motion were denied by the court.

(9) On October 31, 1939, the original plaintiff, Kasco Incorporated, was permitted by the court to withdraw from said case 82022 [supra ¶7], and an entirely new party George F. Millard, a non-appealing defendant here, was substituted as assignee and plaintiff. Plaintiff-appellant Cabiness asserts this substitution was prohibited by Sec. 971, R.S. 1939, which forbade the adding or striking out of the name of a party before final judgment if it changed substantially the claim or defense. That statute was repealed by Laws Mo. 1943, p. 356, Sec. 1, and under the "Land Tax Collection Act", Laws Mo. 1943, pp. 1036-7, Sec's 11, 14, suits for the collection of delinquent taxes were required to be brought by the collector directly against the land without naming any person as defendant, and were declared to be actions in rem.

(10) On February 23, 1940, the trial court rendered a judgment in said foreclosure suit No. 82022 originally brought by Kasco Incorporated [supra ¶7], in favor of the substituted plaintiff Millard [supra ¶9] holding said sewer special tax bill No. 960 there involved was a special and first lien—subject to general unpaid ad valorem taxes due the defendant Kansas City—and superior and paramount to the liens and claims of all the other defendants. The amount of the judgment, and interest, was $68.65 to be levied by execution on said Lot 55. That execution was issued over eight years later on May 5, 1948, the defendant-respondent J. E. Bayne being the purchaser at the sheriff's execution sale held on June 2, 1948 for $252.98, and receiving a certificate of purchase that day redeemable in one year, which was recorded on July 20, 1948, the sheriff's deed being executed on August 5, 1949, and recorded on September 26, 1949 in Book B 4309, p. 489, conforming to Sec's 305, 306 and 307, Art. VIII of the Kansas City Charter. Appellant asserts that when Lot 55 was sold it was worth $1000 to $1200, and that the purchase price of $252.98 was grossly inadequate.

(11) The separate answers of the defendants-respondents Kathleen F. Bayne and J. E. Bayne, Jr. in this case were identical. Both alleged plaintiff-appellant Cabiness' second amended petition showed on its face that it failed to state a claim against them, respectively, upon which relief could be granted, and both admitted the averments of paragraphs 5, 8, 9 and 11 of the petition, with one exception as to paragraph 11, and denied the allegations in all the other paragraphs.

(12) Of the admitted paragraphs, the fifth recited the filing of said suit No. 82022 by Kasco Incorporated and enumerated the defendants joined therein. Paragraph 8 conceded the record in that case showed

the plaintiff-appellant filed an application to intervene therein and a motion to dismiss, both of which were overruled. Paragraph 9 pleaded and quoted Sec's 4, 10, 11 and 14 of the Land Tax Collection Act, Laws Mo. 1943, pp. 1029 to 1062, inclusive. And paragraph 11 recited the history of the Kasco case as given herein [supra ¶10] whereby the defendant-respondent J. E. Bayne, Jr. became the purchaser of said Lot 55, supra, at the execution sale on June 2, 1948, for a consideration of $252.98, which the petition charged was grossly inadequate, and received a certificate of purchase and sheriff's deed, dated August 5, 1949. The only part of this paragraph denied in respondents' answers was the charge that said consideration of $252.98 was inadequate.

(13) Respondent J. E. Bayne's counterclaim based on his title to Lot 55 on the judgment of the trial court dated February 23, 1940 in the Kasco case in favor of the substituted plaintiff Millard [supra ¶10]. That judgment held a special sewer tax bill No. 960 against the lot was a special and first lien subject only to unpaid ad valorem taxes due Kansas City, and superior to the liens and claims of all the defendants in the case. Over eight years later Bayne was the purchaser of the lot at the execution sale under that judgment held on June 2, 1948, a certificate of purchase and deed being issued to him, the deed dated August 5, 1949, and recorded September [630] 26, 1949, but still within the ten year period of limitation fixed by Sec. 1038, R.S. 1939, § 516.350, R.S. 1949, V.A.M.S.

(14) Appellant Cabiness claims title to Lot 55 under Kansas City's quitclaim deed to her dated July 8, 1946 [supra ¶ 1]; the quitclaim deed from Findlay Marlborough Realty Company to her dated December 11, 1946 [supra ¶ 2]; the certificate of redemption issued to her by the Jackson County collector dated December 31, 1946 [supra ¶3]; her purchase of Special Tax Bill No. 162 against Lot 55 from Kansas City on April 8, 1947 [supra ¶ 4]; and the quitclaim deed from Kansas City to her dated April 12, 1947 [supra ¶ 5].

(15) All these last mentioned muniments of title were acquired by appellant Cabiness over two years before respondent Bayne received in August, 1949 his deed as purchaser at the execution sale in the Kasco case. But the *judgment* upon which that execution sale was based had been rendered over six years earlier on February 23, 1940, and it had declared the special sewer tax bill underlying the suit to be a first lien, subject only to ad valorem taxes due Kansas City which, as we understand, had already been paid by appellant Cabiness [supra ¶ 6].

(16) The trial court's judgment and decree in this case held that the defendants Millard and his wife had no interest in the subject matter thereof; found the issues in favor of all the defendants and against the plaintiff on the latter's second amended petition; and the issues on the defendant J. E. Bayne's first amended counterclaim in his favor.

(17) Appellant Cabiness argues first that the instant suit is in equity, and that we are to weigh the evidence and reach our own conclusions. Next she charges respondent Bayne's predecessor in title, Millard, with laches in permitting his judgment of February 23, 1940 in the Kasco case to lie dormant for over eight years until the execution therein was issued on May 5, 1948 [supra ¶ 10]. For this reason she asserts respondent Bayne's predecessor in title Millard should be held to have abandoned the judgment of February 23, 1940 in the Kasco suit.

(18) On this issue appellant Cabiness cites Decker v. Evans (Mo.Div.2) 221 SW.(2d) 127, 129, 130 (1,2,3). That case held "A sheriff's deed duly executed and delivered relates back and conveys title as of the inception of the lien of the execution or judgment, except as to intervening innocent purchasers—purchasers without notice" (citing cases); and that "Sheriff's deeds should be recorded as innocent purchasers may take title." Continuing, the decision states: "We have held that a sheriff's deed, although signed does not pass title to the purchaser of land at an execution sale until delivery of the deed (citing cases). Claims to the premises by a purchaser at a sheriff's sale have been considered abandoned after the lapse of many years where the purchaser failed to take delivery of the sheriff's deed (citing cases)."

In this Decker decision the defendant Evans had purchased a lot in St. Louis in October, 1937 under a special execution for a benefit assessment in condemnation proceedings. The sheriff's deed was issued but not delivered to her at the time. A month later in November, 1937 the lot was sold for 1930 delinquent general taxes and bid in by the city. Defendant Evans with knowledge of her interest made no effort to redeem the lot from that sale, but suffered the plaintiff Decker, an innocent purchaser for value, to redeem the title to the lot from the city in 1941, he paying the taxes thereon for the eight years from 1937 to and including 1945. When he went to pay the taxes for 1946 and 1947 he found the defendant Evans by motion in the condemnation proceedings in October, 1945, had enforced delivery to her of the sheriff's execution deed, and had recorded it the same month; and that she had already paid the 1946 and 1947 taxes.

Defendant Evans knew the plaintiff Decker was claiming an interest in the lot, but made no effort to bring him into court as one whose interests might be affected. Neither did she offer to reimburse him for his expenditures in protecting the title after his purchase for value without notice, whereas he offered to do equity and the court so conditioned its decree, which upheld [631] plaintiff Decker's title. We think this decision does not aid appellant Cabiness here, though each party now offers to refund the taxes paid by the other under Sec. 140.600, R.S. 1949, V.A. M.S., supra.

The Decker case is reviewed in 15 Mo. Law Review, p. 404, where it is stated: "The supreme court held that a sheriff's deed should be promptly secured and recorded so as to give notice to innocent purchasers and that the failure of defendant to take any action with respect to her claim to this lot for eight years fully justified the trial court in setting aside the sheriff's deed upon the condition that plaintiff reimburse the defendant for her outlays with interest."

Next appellant Cabiness contends her title liens are superior to those claimed by respondent Bayne. On this point her brief cites three decisions.[1-3] Of these the Missouri Real Estate case stated the general rule was that: "as between two or more tax bill liens, the last one, in point of time, is the superior, in point of claim for satisfaction. And the same is true between liens or general taxes due City or State." It cited the Jaicks case, supra 2. But it ruled that the lien of a subsequent general city tax levied for the support of the city government is superior to the lien of a prior special tax bill issued by the city for public improvements—two different classes of liens. It has not been cited since.

The Jaicks case, supra,[2] was an action on a special tax bill for paving in Kansas City. Its rulings were thus summarized in State ex rel. McGhee v. Baumann, 349 Mo. 232, 236, 160 SW.(2d) 697, 698-9, a banc decision. The lien of a tax bill for street improvements against property assessed with benefits is superior to tax bills previously issued for prior improvements. The power to levy special assessments for improvements is referable to the taxing power. There is no essential difference between such special assessments and general taxes, and the rules of reverse priority applicable to the collection of successive general taxes necessarily apply to the collection of special assessments. No authority or reason was given in the Jaicks opinion for such rule of reverse priority as to general taxes.

Continuing, the McGhee-Baumann case referred to a statement in Little River Drainage Dist. v. Sheppard, 320 Mo. 341, 346, 7 SW.(2d) 1013(1), based on the Jaicks case, supra, declaring "The general rule is that the priority of general tax liens is in the reverse order of their accrual." But the McGhee-Baumann case said that statement was "pure obiter," and asserted the doctrines in other states were in disagreement on this question and that there are some good reasons for both views. It pointed out that one strong argument against the reverse priority view is that a land owner could let the annual taxes on his land for a series of years remain unpaid, and then purchase it at the sale for the taxes of the latest year, thereby obtaining a title

(1) Missouri Real Est. & Loan Co. v. Burri, 202 Mo.App. 242, 216 SW. 570, 571(1, 2, 3).

(2) Jaicks v. Oppenheimer, 264 Mo. 693, 698, 175 SW. 972.

(3) Dyer v. Harper, 336 Mo. 52, 56-7(1, 2), 77 SW. (2d) 106, 107(1-3).

at the foreclosure sale freed from the taxes for the prior years. But the decision conceded the question was one of statutory construction.

It also noted that Sec. 11109, R.S. 1939, Sec. 140.020, R.S. 1949, V.A.M.S. declares a lien on real estate in favor of the State for delinquent general taxes, and that Sec. 11206, R.S. 1939, Sec. 140.690, R.S. 1949, V.A.M.S. declares a lien on real estate in favor of the State for city, town and school taxes "the same as for state and county taxes." Also, by Sec. 11207, R.S. 1939, Sec. 140.700, R.S. 1949, V.A.M.S. the lien of the State under Sec. 11206, supra, was assigned to the cities, thus indicating the lien for general city, town and school taxes was put on an equality with the lien for general state and county taxes, which the decision said was the general rule. This McGhee-Baumann case has been cited in four decisions of this court.[4]

Of these cited cases the Buder decision held a tax sale under Sec. 11125, R.S. 1939, Laws Mo. 1933, Sec. 9952a—the Jones Munger Act of 1933—foreclosed all inferior liens as regards an ordinary purchaser, but subject to reinstatement by redemption. The Baumann-Marbury case held that after the amendment of that Act by Sec. 9953a, Laws Mo. 1939, if the land failed to sell for the amount of the delinquent taxes at two successive sales, it should be sold at the third sale for what it will bring and the purchaser would get title. So much for the present as to appellant's case.

Respondent Bayne's brief bases his title to Lot 55 on the special judgment of foreclosure dated February 23, 1940, in the Kasco-Millard case, [supra ¶ 10]; his purchase at the execution sale over eight years later on June 2, 1948; and his recorded certificate of purchase and sheriff's deed of August 5, 1949, the judgment debtor having failed to redeem within a year, as required by Sec. 307 of the Kansas City Charter. On this contention he cites Sec. 516.350, R.S. 1949, V.A.M.S., Sec. 1038, R.S. 1939, providing a judgment of a court of record is presumed to have been paid and satisfied after the expiration of ten years from the original rendition thereof, and Sec. 513.020, R.S. 1949, V.A.M.S., Sec. 1278, R.S. 1939, providing execution may issue upon a judgment at any time within ten years after the rendition thereof.

In addition respondent Bayne refers to Laws Mo. 1943, Sec. 40, p. 370, Sec. 509.090 R.S. 1949, V.A.M.S. which provides that "in pleading to a preceding pleading, a party shall set forth affirmatively

(4) State ex rel. Buder v. Hughes (Div. 1) 350 Mo. 547, 552(3), 166 SW. (2d) 516, 518-9;
Spitcaufsky v. Hatten, 353 Mo. 94, 127(24), 182 SW. (2d) 86, 106 (47), 160 A. L. R. 990, 1016;
State ex rel. Baumann v. Marburger, 353 Mo. 187, 193(3), 182 SW. (2d) 163, 166(6);
Collector of Revenue v. Parcels of Land, 356 Mo. 1133, 1138(2), 205 SW. (2d) 568, 571(2);
8 Mo. Law Review, p. 254.

* * * statute of limitations * * * and any other matter constituting an avoidance or affirmative defense." The statute is invoked on the theory that appellant Cabiness' reply to respondents' counterclaim failed to plead affirmative defenses. And he relies on Sec's 305, 306 and 307, Art. VIII of the Kansas City Charter, and refers to the following decisions.[5]

In the Tiernan case a condemnation judgment had been rendered in the circuit court in December, 1928, but the execution thereon was not issued and the foreclosure sale was not made until June, 1942, fourteen years later. Likewise the land was not redeemed within a year. The decision held the 10 year period within which an execution could be issued had expired because it ran from the date of the original judgment and not from the date of its affirmance on appeal. The circuit court in the instant case rightly held that the lapse of over *eight* years between the rendition of the judgment in the Kasco case and the issuance of the execution under which respondent Bayne bought Lot 55 did *not* amount to an abandonment of foreclosure.

Respondent Bayne next contends appellant Cabiness got no title to Lot 55 through the quitclaim deed from Kansas City dated July 8, 1946 [supra ¶1] based upon the sheriff's deed to the city in the Pershing Road condemnation proceedings—this because the city had no title since the execution on the judgment in the condemnation proceedings had been issued in 1933 over twelve years after the rendition of the judgment therein in 1921, and no execution would lie in favor of it or its grantee after the lapse of ten years under Sec's 513.020 and 516.350, supra, and the Tiernan and Rosenzweig cases just cited. They support that contention. The Decker case has already been reviewed [supra ¶ 18].

Next respondent Bayne disputes appellant's contention that the $252.98 he paid for Lot 55 at the foreclosure sale in the Kasco case [supra ¶ 10] was grossly inadequate. On this point he cites a number [633] of cases including those cited below.[6] He testified at the trial that Lot 55 was worth "on a guess some place around $1000 to $1200 based on a clear title without outstanding claims" when he bought

---

(5) Kansas City v. Tiernan, 356 Mo. 138, 143-6(3), 202 SW. (2d) 20, 24 (3, 4);
   Rosenzweig v. Ferguson, 348 Mo. 1144, 158 SW. (2d) 124, 127;
   Decker v. Evans (Mo., Div. 2) supra, 221 SW. (2d) 127;
   In re Clark's Estate (Mo.App.) 213 SW. (2d) 645, 650 (2);
   Hauber v. Gentry (Mo. Div. 2) 215 SW. (2d) 754, 759.

(6) Bussen Realty Co. v. Benson, 349 Mo. 58, 61-9, 159 SW. (2d) 813, 814-5;
   Spitcaufsky v. Hatten, supra, 353 Mo. l.c. 120 (11, 12), 182 SW. (2d) l.c. 102 (34);
   Moore v. Brigman, 355 Mo. 889, 892(1), 198 SW. (2d) l.c. 858;
   Harrison v. Coomber Realty & Inv. Co., 359 Mo. 862, 865(2), 224 SW. (2d) 63, 65;
   Buchanan v. Cabiness, 362 Mo. 985, 245 SW. (2d) 868.

it at the Kasco suit foreclosure sale on June 2, 1948. It had a frontage of 167.54 feet on Arletta (?) street, and would be worth $12 per front foot, or close to $1800, but was subject to having sidewalk, curb, grading and paving taxes against it, and its width was only 43 feet which angles down to a lesser width in consequence of which it was "only good for one house."

But previously appellant Cabiness in a motion to set aside the sale of Lot 55 (and others) in the Land Trust Suit, [supra ¶¶ 3,4], had alleged the property would not sell for the amount of the taxes, interest and costs covered in the judgment, and compromised them with the taxing authorities for $214.60 receiving the certificate of redemption from Kansas City dated December 31, 1946. This figure was less than the $252.98 respondent Bayne paid for Lot 55. In the Bussen case the foreclosure bid was $11.00 whereas the evidence showed the land was worth $2000.to $4500. This was held to be so grossly inadequate as to amount to fraud. The Spitcaufsky case held the Land Tax Collection Act provides a method of determining the adequacy of bids at tax foreclosure sales.

The Moore case dealt with the inadequacy of bids at land tax foreclosure sales under the Jones Munger law, which provided for a third sale of land for delinquent taxes for what it would bring, subject to redemption, if the first two sales failed to bring the required amount. In that case realty worth $200 to $800 sold at a tax sale for $155, which was more than enough to pay the delinquent taxes. This was held not to be a fraud upon the state. In the Harrison case the appellant's witnesses valued 40 acres of land at $8,000 to $20,000. It sold at the tax sale for $549.55. The decision held the testimony was speculative and so widely discrepant that it could not be said the foreclosure sale was constructively fraudulent. We are unable to see that the Buchanan case, supra, has any bearing whatever on the instant issue. It is wholly directed to procedural matters.

Appellant Cabiness' reply brief contains this paragraph: "Notwithstanding respondents' contrary assertion we are still of the opinion that counsel admitted Kansas City had title for the 1937 and previous years ad valorem taxes (Tr. 77-78). The sheriff's deed excepted such taxes from respondents' title (App. Br., p. 52) the decree of foreclosure on which the deed was based did twice recite it was 'subject to general unpaid ad valorem taxes due defendant, Kansas City, Missouri' (Tr. 64)."

These references to the record are hardly intelligible. In the first place there is no page 52 in appellant's brief. Considering pages 77-78 of the record and omitting an erroneous reference therein to another deed, the following occurred. Quoting substantially, respondent's counsel asked appellant Cabiness' counsel "Are you willing to stipulate and agree that your exhibit No. 3 from Kansas City—that the city did *not* have title to the sheriff's deed for the Flora Avenue

and 75th Street grading proceedings?'' Appellant's counsel agreed. [This Exhibit 3 was the quitclaim deed of April 12, 1947 from Kansas City to appellant reciting the real estate conveyed had been acquired by tax deed for the years 1937 and prior years, and for sheriff's deeds in the Flora Avenue proceedings.] Then respondent Bayne's counsel interjected: ''1937 ad valorem taxes *only*.'' This must have been intended as a denial that the lots described therein had been acquired by the city by tax deed for years 1937 *and prior years*. Otherwise it is meaningless.

Next appellant Cabiness' reply brief asserts she has the legal title and the better equitable title to Lot 55. On this issue she relies on the eight years delay in the issuance of the execution in the Kasco case [634] [supra ¶10] citing the Decker case [supra ¶18]. We have already held that case does not weaken or defeat respondent Bayne's title or help hers.

Further appellant Cabiness' reply brief states [quoting substantially]: ''It is asserted that as Kansas City was a defendant in the foreclosure action in which respondents (Bayne) acquired their title [referring to the Kasco-Millard case] Kansas City had nothing to convey. This completely overlooks the fact that the judgment (in that case) and the deed of April 12, 1947 from Kansas City to K. A. Cabiness *except* the ad valorem taxes which are superior liens to the tax liens of the respondent (Bayne) and their predecessors, and also that appellant Cabiness' tax liens were later and superior to those of respondents.'' This sentence is incomplete and we do not know what it means.

It is true the judgment in the Kasco case recited it was *subject* to general unpaid ad valorem taxes on Lot 55, due Kansas City. But the quitclaim deed of April 12, 1947 from Kansas City did not, though it stated the lot had been acquired ''by tax deed for years 1937 and prior years and for sheriff's deeds in the Flora Avenue Condemnation and Grade 75th Street Proceedings,'' whereas it was stipulated in the third preceding paragraph hereof that the city did *not* have title through those proceedings.

Continuing, appellant Cabiness' reply brief answers an assertion in respondent Bayne's brief that because Kansas City continued Lot 55 on the tax rolls it did not acquire title thereto in the several tax foreclosures. On that point respondents had cited Kansas City v. Tiernan et al., 356 Mo. 138, 142-3(2), 202 SW. (2d) 20, 22(2)[5] and State ex rel. Associated Holding Co. v. Shain, 335 Mo. 474, 73 SW. (2d) 391, 393. In the Tiernan case the opinion said: ''Had the property been removed from the tax books when plaintiff (Kansas City) bid it in * * * there would have been no tax sales for the city taxes accruing over (subsequent years) at which sales defendant bond corporation'' bid it in. Appellant's reply brief asserts

there was an estoppel in favor of the bonding company in that case. We cannot go into the details of these two cases.

Finally, appellant Cabiness points out that the tax bills under which respondent Bayne acquired title to Lot 55 as execution purchaser had become delinquent on June 30, 1934; the Kasco suit had been filed on April 8, 1935 [supra ¶7]; and judgment thereon had been rendered in favor of the plaintiff Millard on February 23, 1940. All of this was before the Land Tax Collection Act had gone into effect on August 5, 1943. Indeed, the tax bills were over nine years delinquent at that time, but still subject to execution under the ten year provision of Sec. 516.350 [supra ¶ 13]. Thereafter respondent Bayne purchased Lot 55 at the execution sale and got his deed in 1948 and 1949.

But in the meantime the county collector had brought a Land Trust foreclosure suit on September 28, 1945, covering unpaid general state, county and city taxes for a period of years including a sewer tax bill against Lot 55. Appellant Cabiness compromised that tax bill for $32.37, and the suit was dismissed as to it, she taking an assignment of the tax bill [supra ¶ 4]. Respondents Bayne took no steps to bring their claim under the Kasco judgment of February 23, 1940 into the Collector's suit or to bring a suit thereon in the name of the Collector.

Appellant Cabiness contends that final judgment was a "pending action" within the meaning of Sec. 141.350, R. S. 1949, V.A.M.S. and was required by that statute to be consolidated with the county collector's land trust suit of September 28, 1945. The language of the statute is that "all *suits* to collect delinquent tax bills which may be *pending* at the time of the commencement of any suits brought under sections 141.210 to 141.810 affecting the same land shall be consolidated with suits brought under said sections * *." Those sections constituted the entire Land Tax Collection Act of 1943 [italics ours].

On the question as to the meaning of the "pendency" of an action appellant cites. [635] three Missouri cases listed below[7] along with some from other jurisdictions. Of these the Huhn case said " 'pending such adjudication' * * must mean from the time a proceeding is commenced for an adjudication until such adjudication is rendered." It cites Ex parte Munford, 57 Mo. 603, which states "that a suit is 'pending' from the time it is instituted until it is finally disposed of." In the Stegmann case the plaintiff asked for a temporary restraining order. After hearing the evidence the court instead of

---

(7) State v. Huhn. 346 Mo. 695, 700, 142 SW. (2d) 1064, 1067;
    Stegmann v. Weeke, 279 Mo. 131, 135(1), 214 SW. 134(1);
    State ex rel. Barker v. Assur. Co. of America, 251 Mo. 278, 296, 300, 158 SW. 640, 646(7), 648.

merely passing on the issuance, or not, of the restraining order dismissed the plaintiff's bill. This was held to be error since the plaintiff had the right to be heard on the merits or to amend his bill. In the Barker case this court held that in a quo warranto proceeding against insurance companies to prevent·their concerted withdrawal from the state the trial court had a right to restrain such withdrawal pendente lite.

We are unable to see that these decisions lend any support to the contention that the Kasco judgment was "pending" when the county collector's separate Land Trust foreclosure suit was brought on September 28, 1945, the final judgment in the Kasco case having been rendered over 5-1/2 years before that, with no appeal being taken.

Finally, appellant Cabiness' reply brief contends respondents' rights are barred by the following sections of the Land Tax Collection Act, Laws Mo. 1943: Sec. 4, p. 1033, Sec. 141.260, R. S. 1949; Sec. 10, p. 1036, Sec. 141.310 R. S. 1949; Sec. 20, p. 1042, Sec. 141.350, R. S. 1949, supra.

Of these Sec. 4 requires the summary foreclosure of tax bills delinquent at least four years, as provided in the Act. Sec. 10 vests in the county collector the exclusive power to collect them by tax suit after the lists are received by him, but provides that in event of his failure to do so the *holder* of the tax bill may sue in the name of the collector and at his own relation. Sec. 20 requires the consolidation of pending delinquent tax bill suits with suits brought under the Act, thereby operating as an abatement of the pending suits but continuing in full force the tax liens on the land involved. If the collector fails to bring the suit the owner or holder of the tax lien involved must bring it within two years after the Land Tax Collection Act became effective on August 5, 1943, or within two years after the time when such lien or tax lien became delinquent four years, as the case might be.

Quoting substantially, Sec. 52 of the Land Tax Collection Act of 1943, page 1062, provided: "This act shall not affect or infringe upon any of the provisions of Article 22, Chapter 74, (Sec's 11378-11396,) Revised Statutes of Missouri, 1939, [covering counties containing a city having a population of 200,000 to 700,000 inhabitants] but shall be in addition to and supplementary of the provisions of such Article, nor shall it infringe upon or affect the provisions of any special charter or the provisions of the general law relating to taxation and the collection of delinquent and back land taxes not four (4) years or more delinquent and not specifically provided for in this Act."

The foregoing is the same as the first part of Sec. 52, Laws Mo. 1945, page 1771, Sec. 141.680, R. S. 1949, which was passed with an emergency clause and became effective March 28, 1945. But im-

mediately. following that the section adds: ''except, however, that (X) *all* suits to collect *any* delinquent tax bills alleged to be a lien against any parcel of real estate pending at the time this Act takes effect may be prosecuted by the parties thereto to judgment and sale, but not after a petition is filed against such parcel of real estate, under and pursuant to the provisions of this Act; provided, also, that any taxing authority or owner of any tax bill is hereby prohibited from advertising for sale or selling any parcel of real estate for the collection of delinquent land taxes due [636] thereon, except after judgment of court having jurisdiction ordering such advertising or sale, when such parcel is at such time included in any petition duly filed under and pursuant to the provisions of this Act.''

The collector's Land Trust suit No. 9, involving Lot 55 here in question, was filed on September 28, 1945. Included in it was a special sewer tax bill No. 162 for the face amount of $109.48, but for which appellant Cabiness paid only $32.37. The Land Trust suit went to judgment on April 5, 1946, but upon appellant's motion and payment of said tax bill on the above compromise basis the judgment was set aside as to said tax bill on December 2, 1946, and on January 10, 1947 the suit was dismissed with respect to Lot 55 [supra ¶4]. She got no title to Lot 55 through that Land Trust suit.

On the other hand respondent Bayne acquired his title to the lot as purchaser at the Kasco-Millard foreclosure sale in May, 1948, the judgment therein having been rendered over eight years earlier on February 23, 1940. And the plaintiff Millard did not include his final judgment in the Land Trust suit, or consolidate his claim therewith.

Kindred questions have recently been decided by this court en banc in Buchanan v. Cabiness, 362 Mo. 985, 991-5, 245 SW. (2d) 868, 872-4 (2-6). That case construed the part of Sec. 52, Laws Mo. 1945, p. 1771, Sec. 141.680, R. S. 1949 marked (X) and quoted in the third preceding paragraph. The decision said: ''We think that by the words '*all* suits to collect *any* delinquent tax bills' the Legislature meant by this amendment exactly what it said, that is *all* pending suits, no matter how long pending, on *any* delinquent tax bills, no matter how long delinquent, were excepted; and that such an all inclusive exception of suits, pending at the time the Act became effective, cannot be limited by what was in Section 52 prior to the time this exception was put into it by this amendment. * * * Our conclusion and ruling is that suits on special tax bills, pending at the time the 1943 Act became effective, were included in this exception, made by the 1945 Amendment, regardless of time the tax bills sued on were delinquent.''

We therefore conclude that the title to Lot 55 acquired by the respondent Bayne as purchaser at the foreclosure sale in the Kasco-

Millard case in 1948, based on the judgment in that case rendered in 1940, was the better title and the judgment below in this case is accordingly affirmed. All concur.